Edward W. Barker and Robert W. Gwathmey
*vs.* Paolo Borzone.

*Contract of Charter—Construction of a Charter-party—Contract where time is of the essence—Admissibility of Evidence of Usage to show when Lay-days were to commence—Evidence of the motives of Parties in chartering a vessel, and the nature of their business, inadmissible—Inadmissibility of certain Evidence to show knowledge of a Usage or custom—When knowledge of a Usage or custom may be presumed—Measure of Damages.*

On the 5th of October, 1876, P. B. through his agent in Baltimore, chartered to B. & G. a bark, then at Genoa, to carry a cargo of wheat or corn from Baltimore to Europe.   The charter-party contained the following stipulation :   ''It is agreed that the lay-days for loading and discharging shall be as follows : commencing from the time the vessel is ready to receive or discharge cargo, but not before 1st January, and not later than 31st January, 1877, 30 running days for loading and discharging, and 48 hours to wait for orders in Queenstown or Falmouth, further delays to count as lay-days.''   The charter-party also provided that the vessel should ''cr il and load under United States or English Lloyds inspection.''   She arrived at the port of Baltimore on the 26th of January, 1877, at 4 o'clock, P. M., and entered at the Custom House on the 27th.   On the 31st of January, having obtained a

Barker and Gwathmey *vs.* Borzone.

certificate of inspection from the inspector of a Local Marine Insurance Company, the bark was tendered to the charterers on that day at 10 o'clock, A. M. They refused to accept her, 1st, because the tender was one day too late, and 2nd, because they did not recognize as valid the certificate of a local inspector. A certificate was then obtained from the inspector for Lloyds, and the bark was again tendered on the same day between 12 M. and 3 P. M. The charterers again refused, claiming that the tender was too late as according to the custom of the port of Baltimore masters are required to give one day's notice before their lay-days can commence. P. B. then proceeded to obtain another charter. On suit brought by him against B. & G. to recover damages for the loss occasioned by the refusal of the defendants to accept the bark, it was HELD:

1st. That in contracts of this kind, time was of the essence.

2nd That the plaintiff by the charter-party had assumed the obligation that the vessel should be in readiness to receive cargo, so that the "lay-days" should commence not later than the 31st of January; and if this stipulation was broken, and the bark was tendered too late, the defendants were not bound to receive her.

3rd. That the contract being silent as to how soon the lay-days should commence after the tender of the vessel, this question must depend on the custom or usage, if any, which existed in the port of Baltimore.

Testimony on this subject was offered by the defendants tending to prove "that for many years prior to the making of the charter-party in question, and up to the day of trial, there existed a uniform, well known, and well established custom in the shipping trade at the port of Baltimore, whereby the owners, masters or agents of vessels were required after the arrival in said port of a vessel chartered to take a cargo, to complete her fittings for receiving such cargo, and then procure a proper certificate that she had been inspected and was ready to receive such cargo, and that upon the delivery of such certificate with a notice of her readiness to receive cargo, to the charterers, *the lay-days of such vessel would commence on the day following the delivery of such certificate and notice and not before;* and that there was no division of a lay-day recognized, and that if a vessel used any portion of a working day, the charterers were chargeable with one entire lay-day as of that date " HELD:

1st. That the usage proved, was not repugnant to or inconsistent with the terms of the contract, but related to a matter upon which the contract was silent, that is to say, whether the lay-days commenced on the *same day* notice was given that the ship was ready, or not until the day after such notice.

2nd. That on this subject the proof of the usage was full and explicit, and ought to have been submitted to the jury.

It appeared on the cross-examination of the witnesses by whom the custom was proved that it "applied only to a case where the time for the commencement of the lay-days was not mentioned in the charter-party." HELD:

That this evidence did not affect the charter party under consideration. As it provided that the lay-days were to begin on any day not before the 1st nor after the 31st of January, a notification was necessary when the ship was ready to receive cargo; and the same having been given on the 31st of January, between 12 and 3 o'clock, the custom or usage of the trade determined whether the lay-days commenced on that day or the day following.

The defendants offered certain evidence touching the nature and character of their business and the motives and reasons actuating them in making the particular contract in question. On objection, it was HELD:

That this evidence could not in any manner control the construction of the contract or affect the rights of the plaintiff, and was therefore inadmissible.

The defendants also offered evidence designed to bring home to the plaintiff's agents a knowledge of the usage or custom of the trade, by proving their course of proceeding under another charter made with other persons, similar in its terms to the one sued upon in this case. On objection, it was HELD:

That this evidence was inadmissible for the reason that it did not appear that the transaction referred to did not occur after the controversy in the present case had arisen.

Parties may be bound by a custom or usage without showing affirmatively their knowledge of its existence. This knowledge may be presumed. But in such case the usage must be clearly shown to be *general* and *uniform*, so as to give rise to the presumption that the parties were acquainted with it, and intended to contract with reference to it.

The plaintiff in this case, should he succeed on a new trial, will be entitled to no greater damages than the amount of the difference between the amount of freight money payable by the defendants under the charter-party offered in evidence, and such sums as the jury may find, that by the use of reasonable diligence on the part of the plaintiff's agents, said vessel might or could have been chartered for immediately after the refusal of defendants to load said vessel, and for such delay, if any, as was not caused by their own want of diligence in not getting another charter-party.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First Exception.*—After the introduction of evidence by plaintiff and defendants, the defendants further offered to prove by Mr. Gwathmey, one of the defendants, that they were shippers of grain, and that their business required the delivery of complete cargoes on board vessels, between and including the first and last days of the month, in order to comply with contracts for shipments during such months, as the contracts might provide for, and that the limitation as to time in the charter-parties, is important and valuable to enable the shipper to comply with contracts for the shipment of cargoes within certain months.

To the reception of this testimony the plaintiff objected and the objection being sustained by the Court, the defendants excepted.

*Second Exception.*—The defendants offered in evidence a charter-party, similar in terms to the one sued upon in this case, and executed by the same brokers, with the further offer to follow it up by evidence to prove that in carrying out such charter-party the said brokers delivered the certificate of the vessel's readiness to receive cargo, with the notice of such readiness, with a notice that the lay-days provided for in said charter-party, should commence on the day following, and that the lay-days thereunder did not in fact begin until the day following the delivery of such certificate and notice. To the reception of this testimony the plaintiff objected and the objection being sustained by the Court, the defendants excepted.

*Third Exception.*—The testimony being closed on both sides, the plaintiff filed a motion to exclude from the jury the testimony which was offered by the defendants for the purpose of proving the existence of a certain usage or custom in the City of Baltimore. This testimony which was set out in the first bill of exception and which will be found in the opinion of this Court, was objected to by the plaintiff, and was admitted subject to exception. The Court (GAREY, J.) granted the plaintiff's motion to exclude such testimony.

The plaintiff offered the following prayer :

If the jury find from the evidence that the defendants chartered from the plaintiff the bark Maria Margherita Borzone, and signed and delivered the charter-party offered in evidence, that on the 31st day January, 1877, the vessel was tight, staunch, strong and in every way fitted and ready to receive the cargo and make the voyage mentioned in the charter, and was ceiled under English Lloyds inspection and approved, and that at a reasonable hour on that day, after she was so ready and ceiled and approved, as set forth in the Court's instruction, she was tendered to the defendants, and the defendants declined and refused to accept her or to furnish the cargo mentioned in the charter, then the plaintiff is entitled to recover, and their verdict shall be for the plaintiff.

And the defendants offered the eight prayers following:

1. If the jury believe from the evidence, that at the time of the execution of the charter-party offered in this case, there existed in the City of Baltimore a uniform, well known and well established custom, whereby the charterers of vessels chartered for the transportation of grain, were entitled to receive notice from the master or agents of such vessels, of their readiness to receive cargo under such charter-parties, the day before their lay-days should begin ; and shall further find that the defendants did not receive such notice under the charter-party in question until the 31st day of January, 1877, then the lay-days under said charter-party did not commence until the 1st day of February, 1877.

2. If the jury believe from the evidence, that at the time of the signing of the charter-party in this case, there existed in the City of Baltimore, a uniform, well established and well known custom, under which the lay-days of vessels chartered for the grain trade should not commence until the day following a notice of such vessel's readiness to receive cargo under such charter-parties, sent by the master or agents or owner of the vessel to the char-

terer ; and shall further find, that the defendants in this case were not notified that the vessel in question was ready to receive cargo under the charter-party in evidence, until the 31st day of January, 1877, then the plaintiff is not entitled to recover in this action.

3. That the defendants were entitled to receive from the master, owner or agents of the vessel in question, such a timely notice of her readiness to receive cargo under the charter-party in evidence as would have enabled them, (the defendants,) to use her during the whole of a working day in the month of January, 1877, and there being no evidence of such notice, the verdict must be for the defendants.

4. That the defendants were entitled to receive from the master, agents or owner of the vessel in question, and the latter were bound to give them, reasonable notice of the vessel's readiness to receive cargo under the charter-party in question, before they (the defendants) could be required to load her, or be held responsible for not doing so, and in determining the question of reasonableness, the jury may take into consideration the evidence of the custom prevailing at this port.

5. That if the jury shall find that at the time of the making of the charter-party of October 5th, 1876, there existed at the port of Baltimore, a custom, uniform, well known and well established, by which, unless otherwise specially agreed, the owners of vessels are required to give to the charterers thereof notice, that the vessel chartered is ready to receive cargo one day in advance of the day on which such charterers may be chargeable with the use of the vessel chartered, then the letters written and delivered to the defendants on January 31st, 1877, read in evidence as Exhibits A and E, amounted only to a notice that the vessel therein mentioned would be ready to receive cargo and commence her lay-days on February 1st, 1877, and the defendants were not bound under said charter-party to load said vessel.

6. That under the charter-party of October 5th, 1876, offered in evidence, the plaintiff was bound to have afforded to the defendants, opportunity for the use of the vessel therein named, for at least one entire lay-day in the month of January, 1877, and that there is no evidence in this cause from which the jury can find the plaintiff to have afforded such opportunity, and their verdict must be for the defendants.

7 That the jury can give by way of damages to the plaintiff, no other or greater sum than they shall find to be the difference between the amount of freight money payable by the defendants under the charter-party of October 5th, 1876, and such sums as the jury shall find that by the use of reasonable diligence on the part of plaintiff's agents, said vessel might or could have been chartered for immediately after the refusal of defendants to load said vessel, and for such delay, if any, as was not caused by their own negligence or want of diligence in not getting another charter-party.

8. That even if the jury shall believe from the evidence, that the plaintiff could not by the exercise of proper diligence, after being notified by the defendants, of their intention not to load the vessel in controversy, have procured a better charter than that made with Gill & Fisher, the plaintiff is not entitled to recover any damages for the lay-days stipulated for in the latter charter-party, there being no proof that any of said lay-days were used.

The Court granted the plaintiff's prayer, and the defendants' seventh prayer, and rejected the defendants' other prayers, and of its own motion gave the following additional instruction to the jury:

The jury is instructed that by the true construction of the charter-party, given in evidence, the plaintiff was required to tender his vessel to the defendants in readiness for loading under the terms of said charter-party, as set forth therein and in the plaintiff's prayer, at such a rea-

sonable time on the 31st day of January, 1877, as would enable the defendants to begin the loading of the cargo mentioned on the said day, in the usual course of such business in the City of Baltimore.

To excluding, on the plaintiff's motion, the evidence offered in respect of the custom or usage alleged to exist in the City of Baltimore, and to granting the plaintiff's prayer and to the instruction given by the Court of its own motion, and to the rejection of the defendants' first, second, third, fourth, fifth, sixth and eighth prayers the defendants excepted, and the verdict and judgment being for the plaintiff, they appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*T. Wallis Blakistone* and *John H. Thomas,* for the appellants.

The evidence of Gwathmey, as offered in the first bill of exception, should have been admitted. In connection with the testimony already in, and set forth in said bill of exception, as to the working hours of the grain elevators, and the time it would take this vessel to load, it was admissible to show the situation of the parties at the time of making the contract, and their intention and purpose in making it. 2 *Parsons on Contracts,* (6th *Ed.,*) 493–8–9.

The language of the offer shows its relevancy for this purpose. It was admissible to show the importance of the limitation of time in the contract as to the commencement of the lay-days. *Parsons' Mercantile Law,* 362; *Citizens' Fire Ins. Co. vs. Doll,* 35 *Md.,* 107.

The charter-party, so far as the rights of the appellants under it were concerned, was "*for the use of said vessel during the voyage aforesaid,*" exclusive of the deck, cabin, &c., and the obligations on the part of the owners, precedent to any on the part of the freighters, were:

31                    v. 48.

1. That the vessel should arrive at Baltimore, and complete her fittings for loading in time to furnish the charterers one or more lay-days in January, 1877. *Shadforth vs. Higgins*, 3 *Camp.*, 385 ; 1 *Parsons' Maritime Law*, 260 ; *Lowber vs. Bangs*, 2 *Wall* , 728 ; *Maclaughlin on Shipping*, 330.

2. That she should give such reasonable notice of her readiness as would afford the charterers the full use of one or more lay-days in January, and the evidence as to custom was admissible to show what was such reasonable notice. *Armitage vs. Insole*, 68 *Eng. Com. Law*, 728.

The law does not recognize any fraction of a day, and the word lay-day imported a full working day for the purpose of loading said vessel, and the appellants could not without default or consent on their part, be compelled to accept less than a full lay-day in the month of January.

The appellants having neither waived the notice, nor the entirety of the lay-day, could not be called upon to furnish cargo at the time the notice spoken of in the testimony was sent. The evidence of custom was also admissible, to show when the lay-days began. *Edwards vs. Havell*, 24 *Eng. Law & Eq.*, 305 ; *Taylor vs. Clay*, 9 *Q. B.*, 713.

Charter-parties are construed conformably to the usage of the trade in reference to which they are made. 1 *Abbott on Shipping*, 330 ; *Taylor vs. Clay*, 9 *Q. B.*, 713 ; *Maclaughlin on Shipping*, 359, 361.

Parties are presumed to know of, and contract in reference to, a usage which is general. *Kraft vs. Fancher*, 44 *Md.*, 215–216 ; *Appleman vs. Fisher*, 34 *Md.*, 553 ; *Salmon Falls Manufg. Co. vs. Goddard*, 14 *How.*, 454.

The charter-party offered in evidence in the second bill of exceptions, was admissible to show that the parties had recognized the custom contended for, in their previous dealings. *Allegre vs. Insurance Company*, 6 *H. & J.*, 408 ; *Mer. Ins. Co. vs. Wilson*, 2 *Md.*, 240, 241 ; 2 *Parsons on Contracts*, 6th *Ed.*,) 544.

If this had been a contract of sale instead of a contract for *the use* of a vessel, for which the appellants were to pay by the day, a delivery might have been made at any hour of the day. For the foregoing reasons, the appellants' first, second, third, fourth, fifth and sixth prayers should have been granted.

The defendants' eighth prayer was on the question of damages, and should also have been granted, because if they were chargeable with the vessel when the notice was sent to them on the 31st of January, they were entitled to thirty lay-days from that date. The testimony shows that she was re-chartered on the 19th of February, leaving eleven of the appellants' lay-days still to be used before any charge for demurrage could be made against them. There was no evidence that more than eleven lay-days. were used under the re-charter. *Ashburner vs. Balchen,.* 7 *N. Y.*, (3 *Seld.,*) 262.

No *procedendo* should be awarded if this Court should be of the opinion that the appellants were entitled to such a notice, as would give them a full working day, for a lay-day, in the month of January, because it is not pretended that the notice which was sent them was in time for that purpose. Further, because the evidence of custom, if admissible, proved that under the circumstances, the lay-days could not begin until February 1st, when the charter-party provided that they should not commence later than January 31st. This evidence was ruled out after all the testimony was closed, and was unrebutted.

*Sebastian Brown*, for the appellee.

The question raised by the granting of the plaintiff's motion, and the rejection of the defendants' first, second, fourth and fifth prayers was whether the evidence in relation to the custom alleged to exist in the port of Baltimore, was admissible? It was not admissible, because it showed that the custom did not apply to the charter-

party under consideration. The custom, say the witnesses, "applies only to a case where the time for the commencement of the lay-day is not mentioned in the charter-party."

The printed form of the charter-party, and the one ordinarily in use, stipulates simply that lay-days shall commence " from the time the vessel is ready to receive or discharge cargo ; " and that the words " but not before January 1st, and not later than January 31st," were written in this charter-party. Therefore, on the evening of January 30th, there was, " by the terms of the charter," a fixed day on which lay-days should begin, namely, January 31st. This day was then just as clearly " fixed " as if the charter-party had stated in words, that " lay-days shall commence January 31st."

Evidence of custom may sometimes be admitted to explain and interpret a contract, otherwise ambiguous ; but we think no precedent can be found where a contract, valid on its face, was rendered void by evidence of usage. Where a party proves the tender of a literal performance, evidence of custom will not be admitted, if its effect is to destroy the contract. If this custom is to prevail, and by reason thereof lay-days did not commence until February 1st, charterers were released. Time was the essence of the contract. 3 *Kent's Comm.*, secs. 204-5.

That construction ought to be given which will make a contract efficacious; and where a contract is sought to be avoided on the ground of non-performance in time, every fact and circumstance tending to show performance in time should receive the most liberal construction. *Brown vs. Slater*, 16 *Conn.*, 195.

This charter, as to the time when lay-days should begin, is plain and unambiguous. More perspicuous words could not have been chosen. Lay-days shall commence " from the time the vessel is ready to receive . . . . . . . cargo, but . . . . . . not later than 31st January, 1877." There can be no misunderstanding this language. Charter

parties sometimes require one or two days' notice to be given, as in the case of *Weisser vs. Maitland*, 3 *Sanford*, 322, and if the defendants had deemed a notice beneficial to them, they should have put it in the contract.

The evidence was clearly inadmissible, upon the broad and well established principle, that where a contract is clear and unambiguous, and the rights of the parties can be ascertained from the paper itself, no usage will be admitted to control or vary its terms. 2 *Parsons on Contracts*, (1864,) 546, *n. x* ; *Bliven, et al. vs. New England Screw Co* , 23 *How.*, 431–2 ; *Insurance Co. vs. Wright*, 1 *Wallace*, 470–1 ; *Murray vs. Spencer*, 24 *Md.*, 524–5. Usage cannot vary the written terms of a charter-party. 1 *Parsons' Admiralty*, 311, 313, 314 ; *Hall vs. Hurlburt*, *Taney's C. C.*, 599.

The question raised by the granting of the plaintiff's prayer, the rejection of the defendants' third and sixth prayers, and by the Court's instruction, was whether the defendants were entitled to the use of the vessel at least one entire working day in the month of January? In other words, whether the vessel should not have been ready at the first moment of business hours, January 31st? The Court instructed the jury, that by the true construction of the charter, the condition as to time was complied with if the vessel was tendered in readiness "at such a reasonable time on the 31st of January, 1877, as would enable the defendants to begin the loading" on that day, in the usual course of such business in Baltimore.

The time at the disposal of the shipper, loading and discharging cargo, and waiting for cargo to be loaded and discharged, is, called "lay-days." The vessel usually gives a certain number of days, free of charge, for loading and discharging, and if more are consumed the shipper pays for them so much per day. This charter gives thirty days for loading and discharging.

The charter-party speaks of "lay-days," not "entire lay-days," nor "working days," as expressed in the defendants' third and sixth prayers. The defendants themselves proved "that there was no division of a lay-day recognized, and that if a vessel used any portion of a working day, the charterers were chargeable with one entire lay-day as of that date." This undisputed fact we must assume was in contemplation of the parties; therefore, when the charter was signed, defendants must have known that if the vessel was ready at any time January 31st, they were chargeable with a lay-day, (that is, that the vessel would, after January 31st, only be at their disposal free of charge twenty-nine days;) and hence, when the vessel was tendered on that day, she gave one lay-day in January, as required by the charter.

The language is, that lay-days shall commence "from the time the vessel is ready," provided that she must be ready in the month of January. The vessel might be ready at seven o'clock in the morning, or at three in the afternoon. "From the time," that is, from the hour she is ready, if a reasonable hour to commence loading, is the language of the contract.

But the question is, settled on authority. At most, plaintiff was only required to tender his vessel in readiness January 31st, and all the authorities agree that such a tender may be made at any time before sunset. Our prayer does not go to this extent. *Savary vs. Goe*, 3 *Washington C. C.*, 141–2; *Harris vs. Blen*, 16 *Maine*, 175; *Startup vs. Macdonald*, 6 *Man. & G.*, 593; *Chitty on Contracts*, (11th Ed.) 1189, n. (m.)

The defendants offered to prove by Mr. Gwathmey the nature of their business, and that the limitation as to time was an important element to the shipper. We don't think the nature of the defendants' business can vary the contract; and as to time we admit it to be material.

.As the only effect of the evidence offered by the defendants, and the exclusion of which constituted their second exception, was to prove the usage or custom, it was properly excluded.

The defendants' eighth prayer, was properly rejected : First, because there was no evidence to sustain it. Second, because it could only mislead the jury. Third, because it was ambiguous. And fourth, because the defendants' seventh prayer, which was granted, fully and clearly laid down the rule of damages.

BARTOL, C. J., delivered the opinion of the Court.

This suit was brought against the appellants, for an alleged breach by them of a contract of charter.

It appears that on the 5th day of October 1876, the appellee through his agents in Baltimore, chartered to the appellants, the bark " Maria Margherita Borzone," then at Genoa, to carry a cargo of wheat or corn from Baltimore to Europe.

The charter-party contained the following stipulation : " It is agreed that the lay-days for loading and discharging shall be as follows: commencing from the time 'the vessel is ready to receive or discharge cargo, but not before 1st January, and not later than 31st January 1877, 30 running days for loading and discharging, and 48 hours to wait for orders in Queenstown or Falmouth, further delays to count as lay-days."

The charter-party also provided that the vessel should " ceil and load under United States or English Lloyd's inspection."

She arrived at the port of Baltimore on the 26th day of January 1877, at 4 o'clock P. M., and entered at the custom house on the 27th.

On the 31st day of January, having obtained a certificate of inspection, from the inspector of a local marine insurance company, the bark was tendered to the char_

terers, on that day at 10 o'clock A. M. They refused to accept her; first because they claimed that under the charter party January 31st, should have been a *lay-day*, and the tender not having been made until January 31st, *lay-days* would not commence until February 1st, and secondly because they did not recognize as valid the certificate of a local inspector. A certificate was then obtained from J. L. Sanford, Inspector for Lloyd, and the bark was again tendered on the same day, between 12 M. and 3 o'clock P. M. The charterers again refused, claiming that the tender was too late; that according to the custom of the port of Baltimore, masters are required to give one day's notice before their lay-days can commence. The appellee proceeded to obtain another charter, and brought this suit. to recover damages for the loss occasioned by the refusal of the appellants to accept the bark

It was conceded in argument by the appellee's counsel, that the certificate of the local inspector, first obtained, was insufficient, the charter party requiring that the vessel should be *ceiled, &c.*, under "*United States' or English Lloyd's inspection.*" But he maintains that a proper certificate having been obtained, and the bark having been tendered, as before stated, on the 31st day of January, between the hours of 12 M. and 3 P. M ; the stipulations of the charter-party were complied with, and the appellants were then bound to receive her.

In contracts of this kind time is of the essence, as said by *Parsons* (1 *Maritime Law*, 260,) "in all commercial and maritime affairs, time is an element of great value and importance."

In this case the appellee assumed the obligation that the vessel should be in readiness to receive cargo, so that the lay-days "should commence not later than the 31st of January. If this stipulation was broken, and the bark was tendered too late, the appellants were not bound to receive her. In *Shadforth vs. Higgin*, 3 *Camp.*, 385, the

charterers agreed to furnish a cargo at Jamaica, to be taken on board in the usual manner, in time for the July convoy, provided the ship arrives out and ready by the 25th of June. She did not reach Jamaica till the 3rd of July. It was held that the charterers were released. That the arrival of the ship by the 25th of June was a condition precedent. So in *Lowber vs. Bangs*, 2 *Wall.*, 728, "where the charter-party provided that the ship, then in a distant sea, would proceed from one port named, (where it was expected she would be,) to another port named, (where the charterer expected to load her,) *with all possible dispatch.*"

The Supreme Court held that this was "a warranty that she would so proceed, and goes to the root of the contract. Accordingly if a vessel go to a port out of the direct course, the charterer may throw up the charter-party."

These are examples showing the materiality of time in contracts of this kind, and the importance of a punctual compliance with the terms of the charter.

The question in this case is whether the tender of the bark was made in time.

The charter-party provides that "the lay-days shall commence from the time the vessel is ready to receive cargo, [but not before 1st January and not later than 31st January 1877], these words, between brackets, are inserted in manuscript in the charter-party which is on a printed form, showing that the dates were considered by the parties material and important.

Under this stipulation it was the right of the appellee to tender his vessel in readiness to receive cargo at any time within the period named; and the *lay days* would then begin to run; provided however they should "commence not before the *first* or later than the 31st of January."

The appellee's counsel argues that the contract was complied with, if the bark was in readiness and was tendered at any time during the 31st day of January. His proposi-

tion is that if money is to be paid, or an act done on a certain day, the party has the whole day in which to perform the contract.

This is no doubt the general rule of law. *Savary vs. Goe,* 3 *Wash. C. C. R.,* 140; *Startup vs. Macdonald,* 6 *Man. & Gr.,* 593. In this case ALDERSON, B. said "the general rule, I conceive, is that wherever in cases not governed by particular customs of trade, the parties oblige themselves to the performance of duties within a certain number of days, they have until the last minute of the last day to perform their obligation. The only qualification, that I am aware of, to this rule is that in acts requiring time in order that they may be completely performed, the party must at all events tender to do the act, at such a period before the end of the last day as, if the tender be accepted, will leave him sufficient time to complete his performance before the end of the day."

The case of *Startup vs. Macdonald,* from which this citation is made, is a very interesting one, it was first tried in the Court of Common Pleas, and was taken on appeal before the Exchequer Chamber, where it was twice argued. The general principles governing the question of the time when a tender of performance of a contract may be made were fully discussed, and many authorities cited. The general proposition as laid down by Baron ALDERSON was, concurred in, and would seem to be well settled. It follows that if in the contract before us, the appellee had agreed that the vessel should be tendered ready to receive cargo on any day not before the 1st, or later than the 31st of January, the right of the appellee to recover would be clear and unquestionable, because he would have performed the contract according to its terms, and there would be no room for resorting to extrinsic evidence with regard to the custom or usage of trade, to the contrary. Such evidence would in that case be inadmissible, because it could have no effect except to vary or contradict the express

terms of the contract. 2 *Parsons on Con.*, (6th Ed.,) 546 m. *Case of Schooner Reeside*, 2 *Sumner*, 567 ; *Hall vs. Hurlbut, Taney's C. C. D.*, 599 ; *Ins. Co. vs. Wright*, 2 *Wall.*, 470, 471 ; *Foley vs. Woodside*, 6 *Md.*, 38.

But such are not the terms of the contract. The stipulation is not that the vessel shall be ready by a particular day, but that the *lay-days* shall not commence after a particular day, viz., *not later than* 31st *of January*. It is clear that the appellants were entitled to at least one lay-day in January.

Now the question arises, if the vessel be tendered on that day, when do the *lay-days* commence? On this point the contract is silent, it must depend on the custom or usage, if any, which exists in the port of Baltimore. It appears that testimony on this subject was offered by the appellants, tending to prove "that for many years prior to the making of the charter-party in question, and up to the day of trial, there existed a uniform, well known and well established custom in the shipping trade at the port of Baltimore, whereby the owners, master or agents of vessels were required after the arrival in said port of a vessel chartered to take a cargo, to complete her fittings for receiving such cargo, and then procure a proper certificate that she had been inspected and was ready to receive such cargo, and that upon the delivery of such certificate, with a notice of her readiness to receive cargo, to the charterers, *the lay-days of such vessel would commence on the day following the delivery of such certificate, and not before*, and that there was no division of a lay-day recognized, and that if a vessel used any portion of a working day, the charterers were chargeable with one entire lay-day as of that date."

The testimony as to the custom was taken subject to exception, and was afterwards on motion of the appellee, excluded from the consideration of the jury.

We think in this ruling there was error.

"If the terms are technical or equivocal on the face of the instrument, or made so by reference to extraneous circumstances, parol evidence of the usage or practice in the trade, is admissible to explain the meaning." *Salmon Falls M. Co. vs. Goddard,* 14 *Howard.* 447.

In *Appleman vs. Fisher,* 34 *Md.,* 540, (553) this Court said: "The principle upon which usage or custom is applied to the interpretation of contracts is very familiar, and of constant occurrence. It may be resorted to in the absence of express stipulations, or where the meaning of the parties is uncertain or doubtful upon the language used, or where the usage of the trade or business to which the contract relates, or with reference to which it was made, may afford explanation or supply deficiencies in the instrument. Technical, local or doubtful words may be thus explained. So when stipulations in the contract refer to matters outside the instrument, parol proof of extraneous facts may be necessary to interpret their meaning."

The usage here proved is not repugnant to or inconsistent with the terms of the contract, it relates. to a matter upon which the contract is silent, that is to say, whether the lay-days commence on the *same day* notice is given that the ship is ready, or not until the day after such notice. On this subject the proof of the usage seems to be full and explicit and it ought to have been submitted to the jury.

It appeared on the cross-examination of the witnesses by whom the custom was proved, that it "applies only to a case where the time for the commencement of the lay-days is not mentioned in the charter-party," and therefore the appellee's counsel contends it has no application to this case; but it is quite clear this objection is not well taken, for in the charter-party under consideration the particular day on which the lay-days were to commence is not mentioned. They were to begin on any day not before the

Barker and Gwathmey *vs.* Borzone.

1st, or after the 31st of January. In such case a notification was necessary when the ship was ready to receive cargo, and the same having been given on the 31st of January between twelve and three o'clock, the custom or usage of the trade determines whether the lay-days commence on that day or the day following.

The evidence of custom having been erroneously excluded it was error to grant the prayer of the appellee, and the Court's instruction was also erroneous ; it was proper for the evidence of the custom or usage to be submitted to the jury and the *first, second* and *fifth* prayers of the appellants ought to have been granted.

We find no error in the ruling upon the appellants' first bill of exceptions, the nature and character of the business of the appellants, and the motives and reasons actuating them in making the particular contract in question, could not in any manner control its construction or affect the rights of the appellee, evidence on that subject was therefore properly excluded.

The evidence offered in the appellants' *second bill of exceptions,* was designed to bring home to the appellee's agents a knowledge of the usage or custom of trade, by proving their course of proceeding under another charter-party made with other persons, similar in its terms to the one sued upon in this case. But we think this evidence was properly excluded, for the reason that it does not appear that the transaction referred to, did not occur after the controversy in the present case had arisen. In which case it would be clearly inadmissible for the purpose of proving their knowledge of the custom, at the time the contract was made, or at the time it was to be performed.

But parties may be bound to a custom or usage, without showing affirmatively their knowledge of its existence; this knowledge may be presumed. But as we said in *Appleman vs. Fisher,* in such case, " the usage must be clearly shown to be *general* and *uniform,* so as to give rise

to the presumption that the parties were acquainted with it, and intended to contract with reference to it." 34 *Md.*, 554.

The *third, fourth* and *sixth* prayers of the appellants were properly refused. We do not consider that the rights of the parties depend exclusively upon the construction of the charter-party *per se.* This must be read in the light of the evidence as to the custom or usage of the trade to which it relates, if the jury shall find such a custom to exist; and upon this the defence of the appellants must rest.

As the case must be sent back for a new trial, it is proper to say that the measure of damages, in case a verdict should be found for the plaintiff is correctly stated in the defendants' *seventh* prayer which was granted.

*Judgment reversed, and*
*new trial ordered.*

(Decided 2nd May, 1878.)