year, be and they are hereby vacated, and declared to be null and void." *Decreed* also, "that the appellant, *Edward Hill Dorsey*, bring and pay into the court of chancery, for the use of the representatives of the said *Edward Dorsey*, the sum of $8,778 80, which sum is ascertained to be due to them by the account hereunto annexed; and that when the said sum of money shall be so paid and lodged in the court of chancery, and not before, the heirs of *Edward Dorsey* deliver to the appellant full and peaceable possession of all that part of the land called *Taylor's Forest*, which is included in the deeds before mentioned." *Decreed* also, "that the appellees pay to the appellant the costs which have accrued in this court, and in the court of chancery, and by him expended and paid," and, "that the chancellor make and pass all such orders and decrees as shall or may be necessary to carry this decree into full and complete effect."

DECREE REVERSED, &c.

## DEC. 1813.    CLOHERTY'S EX'R. vs. CREEK.

P C being the agent of P S, did as such contract with W C to to sell to him a house and lot for $190, and an agreement in writing to that effect was entered into by P S with W C, and that on payment of the money a deed should be executed to W C by P S. The amount of the purchase money was paid by W C to P C, who, before the payment of the money to him stated to W C, that if any difficulties should arise about the title to the lot, he was good for the money, and would return it to him. In an action for money had and received, brought by W C against P C, evidence was given that a claim had been made to a part of the lot, and it had been actually enclosed with a fence by R Q; and that no deed for the lot had ever been made or tendered by P S, or any other person, to W C. *The court* refused to direct the jury, that no parol evidence could be received to show that a claim had been made to any part of the lot, and that it had been enclosed; or to direct them that the plaintiff was not entitled to recover.

APPEAL from *Baltimore* County Court. *Assumpsit* for money had and received. The general issue was pleaded. And at the trial the plaintiff, (now appellee,) gave in evidence, that the testator of the defendant, (the appellant,) being the son-in-law and agent of a certain *Philip Staylor*, did as such contract and agree with the plaintiff to sell him a certain lot of ground in *Baltimore* for the sum of $190. And also gave in evidence the following agreement executed by *Philip Staylor*: "This indenture made the 8th day of May, in the year of our Lord one thousand eight hundred and four, between *Philip Staylor*, of *Baltimore* county, and *William Creek*, of the same county. The said *Staylor* doth sell a house and lot to the said *William Creek*, his heirs, executors, administrators or assigns, for the consideration of the sum of one hundred and ninety dollars, to be paid to the said *Philip Staylor*, or his heirs, executors, administrators or assigns. The said *Philip Staylor*, or his heirs, doth agree to give the said *William Creek*, or

his heirs, a deed at the last payment of ninety dollars, which is to be paid the first day of February 1805.

his

"Philip ⋈ Stalor."

mark and (Seal.)

Also a receipt endorsed on the said contract, dated the 8th of May 1804, signed by the defendant's testator, for $100. Also a note executed by the plaintiff to the defendant's testator, on the 8th of May 1804, for $500, payable ten months after its date. Also receipts thereon, endorsed by the defendant's testator, for the amount of said note. The plaintiff further gave in evidence, that before the payment of the money mentioned in the first recited receipt, and before the execution of the above note of hand, the plaintiff told the defendant's testator, that he the plaintiff was a coloured man, and not acquainted with titles to land. Whereupon the defendant's testator, told him the plaintiff, that if any difficulties should arise about the title to the lot, that he was good for the money, and would return the same to the plaintiff. Upon which the money was paid to the defendant's testator, and the said note of hand was signed. The plaintiff further gave in evidence, that a claim had been made to a part of the said lot, and the same had actually been enclosed with a fence, by a certain *Robert Oliver*; and also that no deed for the lot had ever been made or tendered by *Philip Staylor*, or any other person, to the plaintiff. The defendant then prayed the court to direct the jury, that no parol evidence could be received to show that a claim had been made to any part of the lot, and that the same had been inclosed; and also further prayed the court to direct the jury. that the plaintiff was not entitled to recover in this action. But the Court, [*Nicholson*, Ch. J.] refused to give either of the directions. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. and BUCHANAN, EARLE, and JOHNSON, J.

*Glenn*, for the Appellant. There are several objections in point of law to the right of the appellee to recover the sum claimed from the appellant.

1. There was a voluntary surrender on the part of the appellee, and no legal eviction; and there is no case in

1813.

Cloherty
vs
Creek

the books where a similar recovery to the present has been had, without a regular proceeding at law against the premises, and a recovery thereupon. Were the law otherwise, it would be the most easy thing in the world for a man who had made a bad bargain, to permit a claim to be set up against the property purchased, and a surrender *by covin* of the premises to the party claiming. If an ejectment had been instituted against *Creek*, and a recovery of the lot had ensued, then an action for money had and received might have been maintained against *Staylor*, the bargainor, but not even in that case against *Cloherty*, who had merely received the money for another, and had afterwards parted with it. *Crips vs. Reade*, 6 *T. R.* 606.

2. The appellee cannot recover in this action, because no notice of any claim being set up to the property in question was given by him to either *Staylor*, the bargainor, or to *Cloherty*, the testator, and consequently, as neither of them was notified of the claim, neither of them had an opportunity of defending the property against the claim thus set up; and indeed, for aught that appears, the person who has fenced in a *part* of the lot had no legal title to the same, and unless that is made manifest to the court, it cannot be conceived how the appellee can pretend to claim to have the money paid by him refunded. If A sells a lot to B, and makes a general warrantie—in order to maintain an action on the warrantie, B must show a legal eviction by due course of law; or at least notice must be given to A, with a request to defend the lot against a claim made against it. To support this, he cited *Harr.* and *But. Co. Lit.* tit, *Warrantie*, 565.

3. Before the action for money had and received was instituted, the plaintiff below ought to have made an offer to surrender to *Staylor*, the seller of the lot, that part of it which had not been taken away by any claim whatever, as he could not, (as he has done in this case,) go for the *whole* amount of the purchase money without such surrender or offer. *Weston vs. Downes*, 3 *Doug.* 23. *Towers vs. Barrett*, 1 *T. R.* 133. *Stratton vs. Rastall*, 2 *T. R.* 366.

4. The action for money had and received is not the proper form of action, as it was a special understanding, and therefore ought to have been specially set out. *Esp. N. P.* 138, 9. The reason in equity why such a claim as this made by the appellee against the appellant, is resist-

ed, is because *Cloherty*, the testator, had parted with all the money he had received for *Staylor* from the appellee, long before the institution of this suit; and it is apprehended that *Staylor* is the person to whom the appellee should look, if indeed he has a remedy against any person.

*Magruder*, for the Appellee. The defendant's testator sold to the plaintiff a lot of ground, and agreed, in case of any difficulty with respect to the title, to refund the money received by him on account thereof. It is not stated in the bill of exceptions that the defendant's testator, who it appears was the agent of his father-in-law, had, or that his executor had, paid over the money when this suit was instituted; and after the contract with the plaintiff, while any doubt with respect to the goodness of the title existed, he was bound to retain it in his hands. It appears too, that in order to get the money, he engaged to be personally responsible. The objection, therefore, that the defendant's testator was only an agent, cannot be sustained.

The counsel for the appellant contends, that there ought to have been an eviction, and the defendant's testator, or his constituent, ought to have had notice of the adverse claim, and an opportunity of defending the title in an action of ejectment. But it does not appear that the plaintiff was ever in possession of the lot, or able to get possession of it. The evidence is, that *Oliver* was in possession of part, and had actually enclosed it; and upon the statement of facts in the bill of exceptions, it must be presumed that he was in the possession at the time of the sale. There could then be no eviction of the plaintiff, and for want of title, (no deed having been executed or tendered to him,) he could not institute a suit for recovery of the lot. The defendant's testator could not, or would not, give possession to the plaintiff, the latter therefore had a right to disaffirm the contract, and sue for the money paid by him. The counsel for the appellant says, that the plaintiff ought to have made, or offered to make, a surrender of the property to the defendant's testator; but before this can be necessary, it ought to have been proved by him, and the bill of exceptions should have stated that the plaintiff had obtained the possession. This not being stated, cannot be presumed. The action for money had and received is the proper and usual form in which the purchase money is re-

1818.

Saunders
vs
Webster

covered back in case of any defect of title, or disaffirm= ance of a contract. The first branch of the defendant's application, in the court below, was certainly improper. None other than parol evidence could be offered of the adverse claim. The second application to the court, was to instruct the jury, "that the plaintiff was not entitled to recover *in this action.*" It is not stated that the whole of the testimony, adduced by the plaintiff in support of his action, is set forth in the bill of exceptions, and the defendant does not pray the court to instruct the jury that the evidence therein mentioned was not sufficient to maintain the action. This court cannot reverse the judgment, unless they are of opinion, that the testimony stated in the exception was sufficient to defeat the plaintiff *in this action*, notwithstanding any further proof that he might be able to adduce. There is nothing in the record to show that proof was not offered by the plaintiff below of an eviction, after due notice to the defendant's testator of the adverse claim. But from the expressions of the bill of exceptions, we are led to infer, that the counsel for the defendant contended, that the testimony stated in the exceptions precluded the possibility of the plaintiff's recovery "in this action," whatever testimony he might be able to offer, that the objection went entirely to the form of action, or was grounded upon the conclusive testimony offered by the defendant.

                                    JUDGMENT AFFIRMED.

———————

DECEMBER.

SAUNDERS, Terretenant of DULEY, vs. WEBSTER.

J W obtained a judgment again-t J D, and issued a scire facias there- on against R S, as his terretenant, who pleaded that J D was not seized of the land of which he is return- ed tenant at the time of the judg- ment—*Held,* that the *scire facias* could not be sup- ported without producing a grant from the proprie- tary for the land, or laying a foun- dation for presum- ing one. But that a grant for the land, with the

APPEAL from *Harford* County Court. This was a writ of *scire facias* issued against the defendant, (now appel- lant,) as terretenant of *Duley*, on a judgment rendered in that court against *Duley*. The defendant pleaded, that *Duley*, was not seized of the lands, &c. at the time of the rendition of the judgment. At the trial, to prove a seisin of the lands in dispute, which was part of a tract called *Coleraine*, in *Duley*, the plaintiff, (now appellee,) offered in evidence a deed from *Duley*, to the defendant, dated the 16th of June 1803, for part of a tract called *William's Ridge*, containing 100 perches, and for ten acres, part of

deed offered in evidence from J D to R S. and the parol evidence, that J D was, and had been, in pos- session of the land for nine years before his deed to R S, would be sufficient to support the issue for the plaintiff