SELIGMAN BERNEI *vs.* THE MAYOR AND CITY COUNCIL
OF BALTIMORE.

*Opening streets in the City of Baltimore—Surrender of property held by Infants jointly with others—Case of sale of Surrendered property by the city held Invalid for defects in title—Right of purchaser in such case to Recover back the purchase money—Benefits assessed on the Property sold, held to be part of the Purchase money—Voluntary payment—Interest.*

Ordinance No. 25, of April, 1873, of the Mayor and City Council of Baltimore, (City Code of 1879, p. 996,) relating to opening streets, provides for the surrender by the owner, or his agent, of the whole of any lot of which part only is required for the bed of the street to be opened. In cases of such surrender, the Ordinance provides for the sale by the Street Commissioners of so much of the surrendered lot as may not be required for the bed of the street. Under proceedings under this Ordinance for opening a street, the portions of certain surrendered lots, not required for the bed of the street, were sold at public auction by the Street Commissioners. By the terms of sale, the purchaser was to pay the price to be bid at the sale for the lots sold, and *so much as should thereafter be assessed upon them for benefits.* A purchaser at the sale, having paid the amount assessed for benefits upon the lots purchased by him, sued the city in an action of assumpsit to recover back the money so paid by him, on the ground of defects existing in the title to the lots sold to him. The alleged defect in the title to one of the lots, was that some of the joint owners thereof were infants, and could not assent to the surrender, and that their guardian had no power to make such surrender; and as to one other lot the alleged defect was that the owner did not in fact make the required surrender. HELD :

1st. That as the surrender contemplated by the Ordinance was equivalent to a sale, or at least a contract for a sale, no one who was not *sui juris,* could in law be capable of making it; and there was no power conferred by law upon the guardian of an infant, to act for or bind his ward in making such a disposition of his estate.

2nd. That as some of the joint owners were under legal disability to consent or agree to the surrender of their estate, and there was no one capable in law to act for or bind them, the proceeding was invalid to authorize the sale of the property in which they had an interest, by the city.

3rd. That as to the other lot, the owner not having in fact made the surrender which was a condition precedent to the exercise of the power to take and sell the property, the proceeding as to such lot was without due authority and invalid.

4th. That the purchaser took a defective title as to all of the lots so bought by him.

5th. That the money paid by the purchaser for benefits, was not to be regarded as an assessment or tax, the voluntary payment of which would preclude the right to recover it back, but under the facts and circumstances of the case stood on the footing of purchase money; it being paid because the purchaser stipulated to pay as a part of the contract price, in addition to the sum bid at the sale, the amount which should thereafter be assessed as benefits.

6th. That the payment being on account of a purchase of real estate, the title to which failed, owing to the want of power in the vendor to make good its contract, and to convey a perfect title, and the consideration consequently failing, the right to recover back the money so paid was well settled upon principle and authority.

7th. That the allowance of interest upon the amount paid, was a matter of *discretion*, not of *requirement*.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court. Two of the three lots, whose surrender is involved in this case, belonged to the heirs of Charles Carroll, deceased, and the infant children of a deceased heiress, and to her surviving husband, as tenant by the curtesy of his deceased wife's share therein.

*First Exception*—Stated in the opinion of the Court.

*Second Exception.*—The plaintiff offered the six following prayers:

1. If the Court finds from the evidence the following facts, that in the year 1875, the Commissioners for Opening Streets determined under the Ordinance of the Mayor and City Council of Baltimore, offered in evidence to condemn and open Wilkins avenue, that said street as proposed to be opened, passed through the property wherein were interested Robert M. Dennison, Junior, Mary C. Dennison, Charles C. Dennison and Rebecca C. Dennison, children of Robert Dennison, who were infants under the age of twenty-one years, that the said Commissioners for Opening Streets, instead of condemning only such part of said property of said infants as was necessary for the proposed objects, set up and sold at public auction to the highest bidder, the interest of said infants in the residue of said lots not necessary for the bed of the avenue, without any claim having been made on the part of said infants to be compensated for the whole lots so taken, and without any legal assent thereto on the part of all the owners of said lots, and that at said sale the residue of the lots was purchased by Seligman Bernei, the plaintiff, subject to the conditions named in the advertisement offered in evidence, that then defendant cannot comply with the requirements of the 7th section of the Ordinance No. 25, of 1873, and if the Court further finds from the evidence, that subsequently the defendant through its Commissioners, assessed benefits on said lots so sold for the opening of said avenue, and that the plaintiff in ignorance of the fact that the Commissioners (the defendants,) had so sold said lots without there having been made any claim for compensation on the part of said owners, paid the defendant the sum of $2350, which had been assessed to the plaintiff as benefits on said lots as aforesaid, then the plaintiff is entitled to recover the amount so paid, with interest, from the time of payment.

2. If the Court shall find from the evidence, the facts stated in the plaintiff's first prayer, and also that at the

sale of said lots, Nos. 10 and 11, it was stated by the auctioneer that the title to the same was unobjectionable, and that the city would give the purchaser a good title, then the plaintiff is entitled to recover back the amount of $2350, paid under the circumstances as aforesaid.

3. If the Court shall believe from the evidence in this case, that the Commissioners for Opening Streets were authorized and directed to condemn and open Wilkens avenue, from Monroe to Gilmor streets, as provided for in Ordinance No. 141, of 1875, read in evidence, and that Rebecca Spence, Gough C. Schenck, Edwin Schenck, Sophia G. Milligan, Susan C. Poultney, James Carroll, of Charles, A. C. Shippen, C. A. Carroll, of Charles, Robert M. Dennison, Robert M. Dennison, Jr., Mary C. Dennison, Charles C. Dennison and Rebecca C. Dennison, were, in the month of April, 1876, the owners of lots Nos. 10 and 11, on " Plat A," offered in evidence, and that the four persons lastly named, were at that time infants; and shall further believe that the Commissioners, in that month, professing to act under powers derived from, and in conformity with, the provisions of Ordinance No. 25 of 1873, and read to the Court, advertised lots Nos. 10 and 11, (with other lots,) for sale, as shown by the advertisement offered in evidence, and did, on the 25th day of that month, sell the same unto the plaintiff, for the aggregate sum of four thousand dollars, and for such other sums of money as might thereafter be assessed on said lots as benefits for opening the avenue ; and that the plaintiff then gave bond for the payment of the purchase money, as required by the Ordinance ; and shall further believe that the Commissioners then proceeded to ascertain the amount, to which said lots would be benefited by the opening of the avenue aforesaid, and ascertained the same to be $2350.00, and that the defendant afterwards, through its collector, demanded of the plaintiff, payment of the said sum of $2350.00, and that he, in pursuance of the demand, paid the same to

the defendant on the 2nd of October, 1877, then the verdict must be for the plaintiff, in respect to those lots for the amount thus paid, with interest from the time of paying the same, unless the Court shall believe from the evidence, that the plaintiff did at the time of paying the money, know the facts that the persons above named, were the owners of said lots, or that they or some of them were infants at the time aforesaid, or that any of them had not claimed compensation for the property, or surrendered the same according to the provisions of the Ordinance.

4. That if the Court finds from the evidence, the facts stated in the third prayer of plaintiff, and that at the sale made by the said City Commissioners, part of the consideration for the purchase of said lots Nos. 10 and 11, was the subsequent assessment of benefits so made on said lots so purchased, and that the defendant could not comply with the provisions of its Ordinance, then there was such a failure of consideration for the payment aforesaid, as enables the plaintiff to recover back the said amount of $2350, so paid in this action.

5. That if the Court finds from the evidence, the facts stated in the first prayer, down to the words Seligman Bernei, the plaintiff, then the said sale so made, was without authority and void ; and if they further find that subsequent thereto, the said plaintiff paid as residue of purchase money, the sum of $2350 assessed to him as benefits, by said Commissioners on said lots, then there was a total failure of consideration for said payment, so as aforesaid made, and the plaintiff is entitled to recover the same back in this action.

6. If the Court shall find the facts set forth in the plaintiff's first prayer, and shall further find, that the said avenue passed through the property that belonged to Thomas Murray, and that the Commissioners, instead of condemning such part only of the property as was necessary

for the proposed object, set up and sold at public auction, to the highest bidder, the interest of the said Thomas Murray in the residue of the said property not necessary for the bed of the avenue, without any claim of or on the part of the said Thomas Murray, and without any assent of the said Thomas Murray, then the defendant cannot comply with the requirements of the seventh section of Ordinance No. 25, of 1873, and that the Commissioners thereafter assessed, as benefits for opening said avenue, the said residue of said property, and that the plaintiff, in ignorance of the fact, that the Commissioners had sold the said residue of said property, without any claim for compensation on the part of the said Thomas Murray, paid the defendant $60, which had been assessed to the plaintiff as benefits of the said residue of said property as aforesaid, then the plaintiff is entitled to recover the amount so paid, with interest from the time of payment.

And the defendant offered the following prayer:

That if the Court shall find, as matters of fact, that the said several lots mentioned in the plaintiff's bill of particulars were purchased by the plaintiff at a public sale, duly advertised and made of said lots by the Commissioners for Opening Streets, under the provisions of an Ordinance of the Mayor and City Council of Baltimore, of April 10th, 1873, amendatory of section 7, Article 43, of the Baltimore City Code, of 1869, title "Streets," &c., and of said section and article so amended, and that said lots were sold upon the terms set forth in the advertisement given in evidence, and that the plaintiff afterwards paid the assessment upon said lots for benefits from the opening of Wilkins avenue, from Monroe street to Gilmor street, as given in evidence, then that such payment was voluntary on the part of the plaintiff, and the plaintiff is not entitled to recover back the assessment so paid, from the defendant in this action.

The Court (GAREY, J.,) rejected the plaintiff's prayers, and granted the prayer of the defendant. The plaintiff excepted, and the verdict and judgment being against him, appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON, IRVING, and MAGRUDER, J.

*Luther M. Reynolds,* and *Orville Horwitz,* for the appellant.

*James L. McLane, City Counsellor,* for the appellee.

MAGRUDER, J., delivered the opinion of the Court.

This is an action of assumpsit, instituted by the appellant, to recover certain sums of money paid by him as assessments of benefits upon certain vacant lots of ground, for the opening of Wilkins avenue; and which said lots had been purchased from the City at a sale of the residue of certain lots, attempted to be taken in the whole by the "Commissioners for Opening Streets," and not required for the bed of the said avenue.

The property was taken and sold under Ordinance No. 25, of April, 1873, (*City Code of* 1879, *p.* 996,) which provides, that "in every case where it shall be necessary, in order to effect the object proposed, that a part only of a house and lot, or of a lot, shall be taken and used, or destroyed, and the owner or owners thereof shall claim to be compensated for the whole, the said Commissioners may ascertain the full value thereof, as if the whole lot and improvement were necessary to be taken and used for such proposed object; and the whole amount of such valuation, when finally decided on, shall be paid or tendered to the owner or owners thereof, or vested in City five per cent. stock, &c.," and the Ordinance then provides that the Street Commissioners shall, in the manner there-

in prescribed, "sell the materials of any house which it shall be necessary to remove, in whole or in part, *and the residue of any lot of which a part shall be taken and used as necessary to effect the object confided to the Commissioners, and for which the owners shall claim to be fully compensated,* at public auction to the highest bidder, for cash, to be paid on the day when full possession shall be given of the property or materials so sold, and the said Commissioners, or a majority of them, on receiving the price or sum of money so bid, shall convey to the purchaser," &c., and then after some other provisions not necessary to be noticed for the purposes of this case, the Ordinance goes on to provide, "that when a lot is destroyed for the purposes for which it is used or for building purposes, then the said Commissioners shall give notice in writing to the owner or owners thereof, or their agent or agents, of the damage about to be sustained, *and that such owner or owners, or their agent or agents as aforesaid, shall have the space of thirty days to determine whether they will or not surrender the lot so damaged.*"

The alleged defect in the title acquired by the sale under which the appellant bought, as to the Carroll property, is, that some of the owners were infants, and could not assent to the surrender of the property, and that their guardian had no power to make such surrender ; and as to the other lot, (the Murray lot,) that the owner did not in fact make the required surrender ; and we think these are fatal defects.

The Ordinance itself provides for the *owner or his agent* making the surrender, which would seem in terms to exclude the idea that any one but the owner, or his duly constituted agent, should be able to make the transfer of the property to the city ; and as the surrender contemplated is equivalent to a sale or grant of the property to the city, or at least a contract for a sale, no one who is not *sui juris*, could in law be capable of making it ; and there is

no power conferred by law upon the guardian of an infant to act for or bind his ward in making such a disposition of his estate.

The principles governing the proceedings under the Ordinance in question, by which the city assumes to take and sell property situated like this, not actually required to be used for any public purpose, are laid down in the case of *The Mayor and City Council of Baltimore vs. Clunet,* 23 *Md.,* 449, in which the Court, answering the objection to the validity of the Ordinance, that it took, without the consent of the owner, property not necessary for any public use, say:

"It does not sanction the taking of any property from the owner without his consent, not necessary for the public use. If more land is taken in any case than is required for the bed of the street, it is always done with the consent of the owner, to whom the option is given of retaining the fragment of a lot, when part is taken by the city, or of claiming compensation for the whole, and allowing the part not taken, to be sold for the benefit of the parties charged with the cost of the improvement."

Here then, we see the validity of the proceeding is made to depend upon the consent of, and surrender by the owner. As we find, therefore, in the case before us, that some of the owners of the Carroll property were under legal disability to consent or agree to the surrender, (which was equivalent to a sale) of their estate, and that there was no one capable in law to act for or bind them, we must hold that the proceeding was invalid to authorize the sale of that property by the city. In like manner, as to the Murray lot, the owner not having in fact made the surrender which was a condition precedent to the exercise of the power to take and sell the property, it is also clear that the proceeding was also without due authority and invalid.

The purchaser, therefore, took a defective title as to all the lots so bought.

The only question then is, can the appellant recover back the amount paid by him for the assessment of benefits made upon the said lots so bought by him ?

If the money so paid is to be treated as an assessment or tax, the voluntary payment would, it is well settled, preclude the right to recover it back. *Mayor, &c. vs. Lefferman*, 4 *G.*, 436 ; *Morris vs. Mayor, &c.*, 5 *G.*, 244 ; *Lester vs. Mayor, &c.*, 29 *Md.*, 415 ; *Cooley on Taxation*, 566.

But we do not think this payment stands on such ground. Under the facts and circumstances of this case, we consider the money so paid as standing clearly on the footing of purchase money. In the advertisement of sale, it was stated that the purchaser should pay the price to be bid at the sale for the lots sold, *and such sum as should thereafter be assessed upon them for benefits*.

The amount is paid because the purchaser stipulated to pay, as a part of the contract price, in addition to the sum bid at the sale, the amount which should thereafter be assessed as benefits, and hence it must be considered as a part of the purchase money agreed to be paid for the lots, just as fully as the amount specifically bid at the sale. It does not matter that this additional sum was not known at the time of purchase. It was an amount to be definitely fixed, by a certain and defined course of procedure, and according to the maxim, " *id certum est quod certum reddi potest,*" there could be no uncertainty about the contract, which thus rendered the purchase money an entirety, though made up of one fixed sum, and another to be thereafter ascertained in a certain and defined mode.

The payment therefore being on account of the purchase of real estate, the title to which fails owing to the want of power in the vendor to make good its contract, and to convey a perfect title, and the consideration consequently failing, the right to recover back the money so paid, is well settled upon principle and authority. 2 *Addison on Contracts*, (3rd *Am. Ed.*,) *sec.* 533 ; 1 *Sugden on Vendors*,

Bernei *vs.* M. & C. C. of Baltimore.

(*Perkins' Ed.*,) 251, *n.* (*x.*;) *Share vs. Webb*, 1 *T. R.*, 732; *Cripps vs. Reade*, 6 *T. R.*, 606; *Johnson vs. Johnson*, 3 *B. & Pul.*, 162; *Farran vs. Nightingale*, 2 *Esp.*, 639; 2 *Chitty on Contracts*, 920, &c.; *Cloherty vs. Creek*, 3 *H. & J.*, 428.

And it is a general principle, that an action for money had and received will lie for any money in the hands of the defendant, which *ex aequo et bono* belongs to the plaintiff. *Vrooman vs. McKaig*, 4 *Md.*, 450.

The case, (which was tried before the Court without a jury,) was presented to the Court below upon an agreed statement of facts, in which the right was reserved to except to the admissibility of certain facts contained in the statement and exhibits; and the first exception shows that the defendant excepted to all the evidence going to show a defect of title in the lots bought, and that the Court allowed this exception, and excluded such evidence from consideration. For the reasons we have given as to the right of the plaintiff to recover, this ruling was erroneous.

The second exception embraces the prayers. The plaintiff offered six prayers, all of which were rejected, and the defendant offered one prayer which was granted.

We are of opinion that the plaintiff's fifth prayer, and his sixth prayer, (except as to the *requirement* of the allowance of interest, which was a matter of *discretion*,) correctly and substantially presented the law of the case, according to the principles we have laid down, and ought to have been granted; and that the prayer of the defendant, which denied the plaintiff's right to recover, should have been rejected; and finding these errors in the rulings of the Court below, it follows that the judgment must be reversed, and a new trial awarded.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 28th June, 1881.)