# SAMUEL J. ADY

### *vs.*

# FRANK B. JENKINS.

*Contracts*: *when time not of the essence; damages; rescission.*

As a general rule, in mercantile contracts, stipulations as to time are regarded as essential.                          p. 39

In a contract to sell all of the season's canned corn at a certain price, the purchaser to deliver labels for the same by a certain date, it appeared from the evidence that the labels could be affixed at any time, even after the close of the season: *Held,* that the failure of the purchaser to deliver the labels by that date in such a case is not a breach of an essential matter so as to authorize the seller of the canned goods to repudiate the contract.                          p. 40

Where there has been a substantial breach of a contract, the other party has the right to rescind the contract or to refuse to perform his part and sue for damages.                          p. 38'

But a breach of a merely subsidiary provision will not, as a rule, relieve the other party from such further performance as may be due by him, and he is left to his remedy at law for compensation for such damages as he has suffered.                          p. 39

*Decided June 19th, 1918.*

Appeal from the Circuit Court for Harford County.    In Equity.    (HARLAN, J.)

The facts are stated in the opinion of the Court.

Md.]

The cause was argued before Boyd, C. J., Briscoe, Thomas, Urner, Stockbridge, and Constable, JJ.

*Harry S. Carver* and *Edward H. Burke,* for the appellant.

*John L. G. Lee,* for the appellee.

Briscoe, J., delivered the opinion of the Court.

This is an application by a bill in equity for an injunction and for the specific performance of a contract for the sale of a pack of canned corn for the season of. 1917 known as "Hyde's Egyptian Corn."

The injunction was granted, and the defendant was decreed to specifically perform the contract and to deliver the corn, according to the contract.

From this decree the defendant has taken an appeal.

The contract between the parties is in writing and is evidenced by the following letter:

"Hyde P. O., Md., 3/29/1917.

Saml. J. Ady, Esq.,
    Sharon, Md.

Confirming my telephone conversation of last night regarding your offer of March 21st that you will pack for me all your packing of this season, 1917, except 1,000 cases for your own requirement. The price to me is 1.30 per dozen f. o. b. Sharon, shipment to be made as soon as ready. Labels to be in your place or shipped by Aug. 1st. Payment to be made in 10 days & Bill of Lading furnished with each shipment with usual discount for cash. Kindly acknowledge this by return mail. The maximum amount of your pack for my brand not to exceed 5,000 cases.

                    Yours truly,
                            Frank B. Jenkins."

This letter was mailed to and received by the defendant, and it is admitted that the contract was accepted by him.

The defense of the appellant rests on two grounds—first, that the failure of the appellee to deliver or ship the labels by the 1st of August was a sufficient reason for him to rescind the contract; and, second, that the appellant did not use the seed corn stated in the bill.

On the other hand, while it is admitted that the labels were not shipped to the appellant by the 1st of August, 1917, it is contended that this failure to deliver was not such a breach of the contract, under the facts of the case, as to give the appellant a right to rescind the contract.

The law is well settled that when there has been a substantial breach of a contract the other party has a right to rescind the contract or to refuse to perform his part, and sue for damages. *Koch* v. *Wimbrow,* 111 Md. 22; *Anvil Mining Co.* v. *Humble,* 153 U. S. 540.

In *Brantly on Contracts,* page 415, it is said: "It is not, however, every breach of contract, or failure exactly to perform, which justifies a rescission. If the promise which is broken is subsidiary—that is, one which does not go to the root of the matter, defeating the object of the contract, and where the breach can well be compensated by damages—the other party can not rescind for this reason."

In 6 *R. C. L.,* pages 925 and 926, under title "Contracts," the rules of law upon this subject and the authorities in support thereof, are collected and stated at length.

In section 311 it is said it is not every partial failure to comply with the terms of a contract by one party which will entitle the other party to abandon the contract at once. For partial derelictions and nonperformance in matters not necessarily of first importance to the accomplishment of the object of the contract the party injured must seek his remedy upon the stipulations of the contract itself. Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract, or the failure to perform the contract must be in respect to matters which would render the performance

of the rest a thing different in substance from that which was
contracted for.

A breach of but one of the subsidiary provisions or prom-
ises of a contract will not as a rule, relieve the other party
from such further performance as may be due from him
under the contract and he is left to his remedy by an action
for compensation in damages. *Brantly on Contracts,* 415,
439, 300, 401; 6 *R. C. L.,* secs. 312, 313, pages 927 and 928.

While as a general rule, in mercantile contracts, stipula-
tions as to time, are regarded as essential we cannot hold,
under the facts of this case, that the failure of the plaintiff to
deliver the labels by the first of August, was such a breach of
the contract, as to justify the defendant in rescinding and
abandoning the contract.

An examination of the evidence will show that time could
not have been regarded as such a substantial part of the con-
tract or one of its essential terms, as to bring this case within
the authorities relied upon by the appellant, and to have
justified the defendant in refusing to perform his part of the
contract.

The plaintiff testified that he wrote several letters to the
defendant, one in July, 1917, and one in August, 1917, re-
questing him to advise the plaintiff when he would begin
packing corn and how many labels he required to be sent,
but that he received no reply to either letter, and no applica-
tion at any time for labels. That on or about the 27th of
September, 1917, he visited the defendant at his canning
house near Sharon, in Harford County, and made inquiry
as to the pack, and that he was told by the defendant that he
would pack 4,500 cases of the corn, but to his surprise was
informed that he would not deliver the 3,500 cases as agreed
upon, and that he was about to sell the pack elsewhere, and
that he would not deliver the pack to the plaintiff; that he
informed the defendant that he had sold the goods to others
and that canned goods had increased considerably in price
since the contract was made in March, 1917.

While the defendant denied he had received the letter of July, 1917, and gave no reason why he had not replied to the letters, he admitted that he could not have used the labels, on the first of August, 1917 even if they had been delivered on or before that date. He also admitted that he packed only 900 cases in August and that he had three or four bunches of labels left over for the previous year, which he could have used. The labels for the year 1916, under a similar contract between the parties, had not been furnished or delivered until October and November of that year.

The labels, it appears, were to be pasted on the cans after the corn had been packed in them, cooked and cooled, and so far as the packing operations were concerned that could have been done at any time even after the close of the season, as it had been done, under similar contracts, for previous years, with the defendant.

As stated by the Court below in its opinion if the defendant was now allowed to repudiate the contract, the result would be that he would make some seventy cents a dozen additional profit on the goods, while the plaintiff would be obliged if he in any way could find the special quality of goods he had sold, to go into the market and buy at an advance of probably seventy cents a dozen.

It has been frequently held by this Court that where time is not of the essence of the contract a mere failure to perform within the period specified will not avoid or justify the rescission of a contract. *Scarlett* v. *Stein,* 40 Md. 526.; *Baltimore* v. *Raymo,* 68 Md. 569.

It is clear, we think, that the contract in this case is of a nature that a Court of Equity should specifically enforce and that the Court below was clearly right in so directing and in granting an injunction, in its decree of the 20th of October, 1917. *Sullivan* v. *Tuck,* 1 Md. Ch. 59; *Fardy* v. *Williams,* 38 Md. 502; *Eq. Gas L. Co.* v. *Balto. Tar Co.,* 63 Md. 285; *Neal* v. *Parker,* 98 Md. 266; *Brantly on Contracts,* page 252.

There was no reversible error in the ruling of the Court upon exceptions to testimony set out in the record.

The admission of the letter which contained the terms of the contract was entirely proper. It was the real contract between the parties and was referred to in the bill of complaint, "as the contract which was reduced to writing in a letter from the plaintiff to the defendant, which was mailed to and received by the defendant, and the said contract was accepted by the defendant." It was the basis of the suit, made a part of the bill and was clearly admissible in evidence.

As the case is now presented, it is quite certain that the proffer to introduce evidence as to the custom among brokers in Bel Air as to the delivery of labels was properly excluded by the Court and there was no error in this ruling. *Foley* v. *Mason,* 6 Md. 37; *Gibney* v. *Curtis,* 61 Md. 192, *and Balto. Base Ball* v. *Pickett,* 78 Md. 386.

For the reasons we have given the decree of the Court below will be affirmed.

*Decree affirmed, with costs.*