WALTER T. AHRENS ET AL. *v.* PLUMMER A. IJAMS ET AL.

[No. 65, October Term, 1929.]

*Decided January 15th, 1930.*

414

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Raymond S. Williams* and *Roger B. Williams,* with whom were *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellants.

*John Watson, Jr.,* for the appellee.

PARKE, J., delivered the opinion of the Court.

On June 26th, 1920, Plummer A. Ijams and Louise B. Ijams, his wife, the plaintiffs, entered into a contract in writing with Walter T. Ahrens and Edna M. Ahrens, his wife, whereby the defendants agreed to sell, and the plaintiffs to buy, for $12,360, a good and merchantable fee simple title to a lot of land in Baltimore City, with a street frontage of fifty feet and a depth of equal width of one hundred and fifty feet. The plaintiffs paid $1,000 on the purchase price, and had the title examined. An alleged defect was then discovered in the title to a portion of the lot, and the plaintiffs shortly after began a suit in equity to have the contract annulled, and to have that portion of the lot about which there is no question of title declared impressed with a trust in favor of the plaintiffs to the extent of $1,000 paid, with interest from the date of its receipt. The bill of complaint further prayed that the defendants might be enjoined from a sale of the property to be affected by the trust until this sum, with interest, be paid to the plaintiffs. The defendants filed a combined demurrer and answer, and the demurrer was heard and overruled, whereupon an appeal was taken to this court, which affirmed the decree of the lower court in *Ahrens v. Ijams,* 156 Md. 1. The cause was remanded, and the plain-

tiffs later amended the bill of complaint by the addition of a sixth paragraph, in which it is charged that, after the filing of the original bill of complaint and the service of process upon the defendants, the latter had sold the property in question to a certain H. E. Shapiro, and that thereafter the defendants had conveyed the property to a certain Charles S. Burns. After the parties were at issue, the cause was submitted to the chancellor on testimony taken before him and certain agreed facts. By his decree the chancellor annulled the contract of sale of June 26th, 1920; and ordered that the defendants pay the plaintiffs the part payment of $1,000, with interest from August 11th, 1920, adjudging that the portion of the lot agreed to be sold which was within the limits of Baltimore City before the year 1918 be impressed with a lien in favor of the plaintiffs until the aforesaid sum and interest be paid, but if not paid on or before a specified date, together with the costs in the cause, that a named trustee proceed to enforce the payment by a sale in a manner prescribed.

The facts which gave rise to the refusal of the plaintiffs to perform their contract are not disputed. The defendants derived their title from a mortgage deed and its foreclosure in the year 1911. At the date of the execution of the mortgage deed in 1909, and at the time of the foreclosure of the mortgage lien, the dividing line between Baltimore City and Baltimore County passed through the southwestern portion of the lot at five feet and nine feet measured along the back line of the lot and its western side line, respectively, from the point where they meet in a right angle. The intersecting territorial boundary line thus formed a small triangle of an area of twenty-two and one-half square feet, which was located in Baltimore County. With the exception of this small piece the remaining lot was in Baltimore City. The mortgage deed, therefore, conveyed the lot as lying partly in Baltimore City and partly in Baltimore County, and was duly recorded in both political divisions. The mortgagors declared in the mortgage deed their assent to the passing of a decree by either Circuit Court of Baltimore City for a sale

of the property mortgaged, in accordance with chapter 123, sections 720 to 732 inclusive, of the Laws of Maryland, passed in the year 1898, or any supplements or additions thereto. In the event of any default, the mortgage provided that the sale of the mortgaged property might be made by the trustee or trustees named in such decree as might be passed in conformity with said assent for the sale of the said property; or that a sale might be made by the mortgagees, their executors, administrators, or assigns, or by the attorney or agent specifically named under article 66, sections 6 to 20 of the Maryland Code (1888) Public General Laws or under any of the general or local laws of the State of Maryland relating to mortgages.

When the default occurred, the mortgage foreclosure proceedings were begun in Baltimore City by the filing of the usual petition, and, on the same day, pursuant to the consent contained in the mortgage on the part of the mortgagors, the chancellor forthwith passed, on March 23rd, 1911, his decree for the sale of the mortgaged property and for the trustee appointed to make the sale in the manner prescribed by the decree. The trustee thereupon qualified by filing an approved bond, sold the mortgaged premises, reported the sale, which was duly ratified and confirmed, and executed the deed to the purchaser which purported to convey the entire lot. All the equity proceedings were exclusively in the Circuit Court of Baltimore City and were completed in 1911.

The effect of the Annexation Act (Acts 1918, ch. 82) was to bring the entire lot within the limits of the City of Baltimore in 1918, but this legislation has no retroactive effect upon the question for consideration. *Chilton v. Brooks,* 71 Md. 445, 454, 455.

It is clear that a mortgage lien on land must be foreclosed in the city or county where the land is situated, unless the land mortgaged is located in two or more counties or in two or more counties and Baltimore City, in which event, by express and necessary statutory authorization, the foreclosure may be conducted in the county or city, as the case may be, where the prescribed proceedings are first begun. Code, art.

66, sec. 15; *Miller's Equity Proc.*, secs. 4, 464; *Webb v. Haeffer*, 53 Md. 187, 190-192; *Roessner v. Mitchell*, 122 Md. 460.

From the preceding statement of the facts, it appears that the mortgagees were advised by the deed under which their lien arose that the major portion of the lot was in Baltimore City but that a small portion lay in Baltimore County. Furthermore, the mortgagees had at their command two plain remedies which were prescribed by statute, whereby they could at one time and in one proceedings sell the entire lot, by beginning, either in the city or the county, a bill of complaint for foreclosure in accordance with ancient equity practice, or a sale under the power specifically conferred by the mortgage upon the mortgagees, their personal representatives or assigns, or their attorney named in the mortgage. *Supra;* Code, art. 16, secs. 90, 92; art. 66, sec. 15; *Baltimore City Charter & P. L. L.* (1927), art. 4, sec. 730, p. 438; *Miller's Equity Proc.*, secs. 445-447, 452-458, 472. Instead of choosing either of these two methods, the mortgagees availed themselves of the third remedy, of a foreclosure under assent to a decree. By this election the mortgagees, and those claiming title as successors in title to the purchaser at the mortgage foreclosure sale, are bound. The principal question therefore is, Does the equity court of Baltimore City have jurisdiction to sell land situated in Baltimore County under the special, local procedure invoked. *Baltimore City Charter & P. L. L.* (1927), art. 4, secs. 720-727.

The practice of a foreclosure sale under an assent to a decree originated with the Act of 1833, ch. 181, and has continued to the present. It affords a summary remedy for the benefit of mortgagees. Its operation is limited to cases where the mortgagor has in the mortgage deed declared his assent to the passage forthwith of a decree, in conformity with the provisions of the act, providing, before default, for a sale of the mortgaged premises. The proceeding is *ex parte* until after the decree and a sale under the decree. In order to obtain the decree it is only necessary to file the

mortgage and a petition for the decree. No summons is necessary, and no notice is required to be given to the mortgagor or any person claiming under him, and neither prior nor subsequent mortgagees or incumbrancers need be made parties. The mortgagee is entitled to the decree at any time after the recording of the mortgage, and without regard to default. If there has been no default, the decree is entered prospectively. If no default occur, it never becomes effective, but, should there be a default afterward occurring, the decree is enforced. See *Miller's Equity Proc.*, secs. 474 *et seq.*

There must be a strict compliance with the provisions of a statute creating a remedy of such summary nature, and its operation should not be enlarged beyond the limits set by the legislative intention. *Owens v. Graetzel,* 146 Md. 361. Ever since its enactment the act has been a local law and applicable exclusively to the City of Baltimore. The act was passed when Baltimore City, although a municipal body corporate, was within and a part of Baltimore county; and the jurisdiction of the chancellor and of the county court was co-extensive with the whole of the territory then forming Baltimore county, yet the remedy conferred is not made co-terminous with the boundary of Baltimore county but is expressly limited to land within that part of Baltimore county embraced within the municipal limits of Baltimore City. *Miller's Equity Proc.*, secs. 2, 3. The legislative intention is disclosed by the language of the statute and particularly by the opening clauses of its second section:

"Sec. 2. And be it enacted, (in order to the facilitating the enforcement of mortgages of real property and estate in the City of Baltimore), that in all cases of conveyances by way of mortgage of lands or hereditaments or chattels real, situate in the City of Baltimore, and when in the said conveyances the mortgagor shall declare his assent to the passage of a decree as hereinafter mentioned, it shall and may be lawful for the mortgagees or their assigns, at any time after filing the same to be recorded, to submit to the chancellor, or to Baltimore County Court or any Judge thereof, the said conveyances," etc.

This statute, with amendments which do not affect the pending matter, has consistently been recognized as being a local law. Chief Judge Le Grand said, in *Hays v. Dorsey*, 5 Md. 99, 101, "It is an act applicable exclusively to the city of Baltimore." The accuracy and finality of this characterization do not require the support of argument. It is exacted by the wording of the law and accepted as correct by decision and authority. In Major Richard M. Venable's *Syllabus of Law of Real Property*, the learned author wrote in reference to the act and its amendments: "The statutes are applicable to mortgages of property in the city of Baltimore only." (Brodie's Ed.) pp. 222, 224; *Williams v. Williams*, 7 Gill, 302-305; *Cronise v. Clark*, 4 Md. Ch. 403, 408; *White v. McClellan*, 62 Md. 347, 350; *Miller's Eq. Proc.*, secs. 445, 451, 474-485, and notes; *Barroll's Chancery*, 427, 571-573; *Carey's Forms*, pp. 389-392, 570-573.

The effect of a statute limited to property located within the confines of Baltimore City is *ex vi termini* inoperative with respect to land beyond its borders, no matter how close the land may be to the line nor howsoever small in area. Proximity and insignificance in size cannot supply the necessity for direct legislation, and bring within one juridical jurisdiction land which is actually within the boundaries of another such jurisdiction. The local foreclosure remedy of Baltimore City, therefore, did not confer any jurisdiction upon the equity court of that circuit to decree the sale of any mortgaged land without the limits of Baltimore City. Since this special local law, which is of a unique nature and is only applicable to mortgaged property within Baltimore City, sections 90 and 92 (Acts 1870, ch. 450, secs. 1, 2) of article 16 of the Code have no application to the record before the court. *Walker v. Cockey & McConkey*, 38 Md. 75, 78. And therefore the offer to record, and the subsequent filing for record in Baltimore County, of the foreclosure proceedings under the local statute of Baltimore City, did not cure any defect in the defendants' title, since the sale made under the Baltimore City statute was a nullity with respect to the land which was located in Baltimore County. As a consequence

of the exclusively local operation of the statute discussed, the defendants did not have a merchantable title to that part of the lot in Baltimore County. This defect was not relieved by the offer on the part of the vendors to give or secure a guaranty of title or indemnity from loss, since what the plaintiffs had bought was the land, and neither a guaranty of title to land nor an indemnity against its loss is the equivalent of the conveyance of the land by a good and marketable title. *Fry on Specific Performance* (6th Ed.), secs. 1224, 1225, pp. 570, 571; *Sugden on Vendors* (8th Am. Ed.), 573 (382).

The defendants not being able to convey as they had agreed, they could not have recovered at law for the refusal of the plaintiffs to perform the contract. In equity, however, where a vendor is unable from any cause, including any slight defects of title, not involving bad faith on his part, to convey all the land agreed to be sold, and it is apparent that the part which he cannot convey is of small importance or is immaterial to the purchasers' enjoyment of that which may be conveyed to him, the vendor may insist on performance with compensation to the purchaser or a proportionate compensatory abatement from the agreed unpaid purchase price. *Foley v. Crow*, 37 Md. 51; *Pomeroy's Specific Performance* (3rd Ed.), sec. 450, n. p. 927, secs. 339, 347, 437; *Miller's Equity Proc.*, sec. 697; *Sugden on Vendors* (8th Am. Ed.), 477 (375).

On the present record it appears that the division line hedge extended along two sides of the triangular portion of the lot in Baltimore County, and that the southwestern corner of a garage, which was set back about two feet from the outlines of the lot, projected into Baltimore County for a short distance. There is a slight variation in the estimates of the witnesses, but the more liberal by several inches is that the prismatic section of the garage in Baltimore County covered a triangle whose base was one foot and eight inches and whose altitude was three feet. The garage was of wood, and was built on a concrete foundation and floor, with a slate roof. Its cost, without including the labor, was $200, and its value

was estimated to have been from $500 to $600 at the time of the sale to the plaintiffs.

It must be recognized that a defect in two of the division lines of parallel city lots, affecting the utility, shape, and appearance of the lot, and leaving a small corner of the garage beyond the property line, is different in substance from a mere discrepancy or loss in area where the vendee will receive a grant according to the visible boundaries. However, the court expresses no opinion whether or not the part in Baltimore County that could not be conveyed was of such small importance, or so immaterial to the purchasers' enjoyment of what could have been conveyed to them, that the defendants might have successfully resisted the plaintiffs' suit, and have obtained a decree for specific performance, since the defendants have made the question of specific performance, with a proportionate abatement from the agreed price by way of compensation, of no practical importance. See *Hammer v. Westphal,* 120 Md. 15, 20, 21; *Foley v. Crow,* 37 Md. 51; *Carmody v. Brooks,* 40 Md. 244; *Connaughton v. Bernard,* 84 Md. 587.

Instead of taking defense on the ground of ability to perform substantially their contract, and of offering to convey according to their title, and to make an abatement in the purchase price which would be the equivalent in value of the difference between the lot as agreed to be sold and the lot to which the defendants could convey a good and marketable title, the defendants insisted that the plaintiffs must pay the full purchase price for what defendants had agreed to sell, and that the plaintiffs' refusal to comply and to accept the partial performance was a breach by the plaintiffs of the contract, and entitled the defendants to keep both the deposit and the property. On August 11th, 1920, the plaintiffs began this suit for an annulment of the contract and a refund of the payment of $1,000, and the defendants proceeded promptly to carry their theory to its extreme logical conclusion. On September 8th, 1920, the husband sold the property for $10,000, agreeing to give possession on September 15th, 1920, but the sale was not completed because his wife would not

unite in the deed. However, on September 16th, 1920, the defendants sold and conveyed the property for $11,000 to a third purchaser, who took possession of the premises. These acts of the defendants were in contravention of their contract to sell and convey to the plaintiffs, and barred them from defending the bill of complaint in the instant case on the ground of a present ability and willingness substantially to comply with a proportionate abatement in the purchase money remaining unpaid. *Fry on Specific Performance* (6th Ed.), secs. 979, 1067.

The defendants rest their retention of this payment of $1,000 on the theory that the plaintiffs committed a breach of the contract in declining to accept title from the defendants to the entire lot as located principally in Baltimore City, but partly in Baltimore County. The validity of this position admittedly depends upon the vendors being able and willing to perform their contract and not being in default. The major premise upon which this argument depends fails, since, as has been seen, the vendors, because of a partial defect in their title, were not able to perform their contract, which put them in default, nor did they proffer themselves willing substantially to perform by conveying to the extent of their good and marketable title, and by compensating the plaintiffs for the difference in value of what they were able to convey and what they had agreed to pay by a corresponding abatement in the original purchase price. So, neither in law nor in equity are the defendants entitled to keep the deposit, as the plaintiffs have established they are entitled to have the contract avoided because of the inability of the defendants to convey by a good title a part of the land which the defendants under an executory contract had agreed to convey. Where there is no proof of a wilful breach or of fraud on the part of the vendor, the rule is thus stated in *Williston on Contracts,* sec. 1399: "It was established in an early leading case that for a breach of an agreement to convey a leasehold estate because of the vendor's lack of title, the purchaser was entitled to recover merely the amount of a deposit which he had made on the price. Blackstone, J., said:

'These contracts are merely upon condition frequently expressed, but always implied, that the vendor has a good title. If he has not, the return of the deposit, with interest and costs, is all that can be expected.' " *Flureau v. Thornhill,* 2 Wm. Bl. 1078; *Bain v. Fothergill,* L. R. 7 H. L. 158; *Rowe v. Smallwood,* 36 Ch. Div. 619, 622; *Baltimore Perm. Bldg. etc. Soc. v. Smith,* 54 Md. 187, 206-208; *Bernei v. Baltimore,* 56 Md. 351; *Horner v. Beasley,* 105 Md. 193, 198; *Sugden on Vendors* (8th Am. Ed.), 40 (27), 537 (358), 478 (315), 357 (236). So, in equity the analogous rule is clearly and succinctly put by Mr. Tiffany: "The vendee under a contract for the sale of land has, in equity, before he receives a conveyance of the land, a lien thereon for any payments which he has made upon the purchase price in case the contract fails of consummation owing to the fault of the vendor. This lien appears to be recognized in equity merely for the purpose of aiding the vendee in the assertion of his *quasi* contractual right to a return of the purchase money upon a rescission of the contract of sale for the fault of the vendor." 3 *Tiffany on Real Property* (2nd Ed.), sec. 667; *Pomeroy's Equity Jurisprudence,* sec. 1263. And in *Ahrens v. Ijams,* 156 Md. 1, the matter is concluded by the opinion written by Judge Adkins, when the demurrer to the bill of complaint in the pending appeal was before this court. It was then held that, where a partial payment is made under a contract for the sale of land, and the title to part of the land turns out to be defective, the purchaser has a lien for the sum so paid upon that part of the land to which the vendor has good title.

The decree of the chancellor is in agreement with the views here expressed, and it will therefore be affirmed.

*Decree affirmed, with costs, and cause remanded.*