VELTE, EXECUTOR *v.* MCBRIDE ET AL.

[No. 46, October Term, 1955.]

*Decided December 5, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON, and HAMMOND, JJ.

*Gerald E. Topper* for the appellant.

*M. William Adelson* and *Eugene P. Smith*, with whom were *James D. C. Downes, John G. Arthur, Jr.,* and *Downes & Deitz* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court

This is an appeal from a judgment for costs rendered against Mitchell D. Clogg, trading as Clogg Company, appellant, plaintiff below, in favor of William F. McBride and Ruth D. Scott McBride, his wife, individually and as co-partners trading as Maryland Engineering Company, (McBride), appellees, defendants below.

At the hearing in this Court a suggestion was filed that Mr. Clogg had died after the hearing below and after the appeal was taken. As a result Charles A. Velte, executor of the estate of Mitchell D. Clogg, was substituted as appellant here. In this opinion Mr. Clogg will be referred to as the appellant.

The appellant filed an amended declaration against the appellees on the common counts and on a special count. This special count alleged that about June 4, 1951, the appellees entered into a contract with the appellant for the manufacture of "mast parts" for a total consideration to be paid the appellant of $62,516.80. In pursuance of that contract appellant performed certain services for the appellees under the contract. On October 17, 1951, while the appellant was in full process of manufacturing the metal masts, the appellees, without justification, wrongfully notified the appellant of the cancellation and termination of the contract by reason of which the appellant was put to great loss and damage.

After demand for further particulars, filing of further particulars and the general issue pleas, the case was heard in open court before Judge Manley, who rendered a judgment for the appellees for costs. From that judgment appellant appeals.

The appellant had been in the sheet metal fabrication business in Baltimore for approximately twenty-five years. Southern Industries of Maryland, Inc., (Southern Industries), located at Pikesville, manufactured, among

other things, antenna masts for the Government. Mr. Clogg and Mr. McConnel, President of Southern Industries, collaborated for the purpose of obtaining a sub-contract from the Federal Manufacturing Company, (Federal), the primary contractor with the Government. Southern Industries was awarded the sub-contract for the manufacture of masts by Federal. On account of lack of capital, Southern Industries sub-contracted fifty percent of the work to McBride, appellees, who in turn sub-contracted to the appellant for the manufacture or fabrication of metal parts.

On June 4, 1951, McBride placed with Clogg a purchase order for 820 sets of metal mast parts at $70.00 per unit or at a total of $57,400.00. Each unit consisted of 33 component parts. On June 11, 1951, McBride supplemented the original order with an order for 820 anchor plates at a total price of $5,116.80. The aggregate price was $62,516.80. The purchase orders specified that all items were to be finished "Per Signal Corps specification 72-53 as stipulated on individual drawings." Prior to the date of the purchase orders photostatic copies of prints had been given to Mr. Clogg which he stated were to be used as a "guide only" in commencing the work. Appellees offered evidence that these prints were sufficient. Attached to the purchase order of June 4, 1951, was the following schedule of deliveries to be made by the appellant: "52 sets by June 15, 1951; 123 sets additional by June 30, 1951; 175 sets additional by July 15, 1951; 175 sets additional by August 15, 1951; 175 sets additional by September 15, 1951; 120 remainder sets by October 15, 1951."

Upon receipt of this order the appellant immediately set up his plant to do the work contracted for. The delivery schedule was not enforced against the appellant. There was considerable delay in the manufacture of certain parts. Appellant testified that this delay was caused by the appellees directing that work be suspended on certain parts because of anticipated changes in the plans and due to delays at the source of the contract.

Mr. Clogg stated that he received verbal instructions to make up fifty or fifty-two sets using the original prints as a guide only and then to hold up until it was determined whether or not the Government was going to approve the proposed changes. Mr. McConnel said that as early as August he was apprehensive as to whether Mr. Clogg could carry out the contract. Appellant claimed that he did not receive final working prints until September 10, 1951. Mr. McBride on September 24, 1951, took Government inspectors to Mr. Clogg's plant. Mr. Clogg stated that this was the first time he had received any definite information from anyone as to what tolerances should be kept and the quality of workmanship required in the manufacture of the parts. A letter from Mr. McBride to Mr. Clogg on October 1, 1951, as to the inspection by the Government stated: "They explained what would be expected of us and you in the matter of workmanship and tolerance." Mr. Clogg further claimed that there was little complaint, if any, from anyone prior to October 1, 1951. That letter of October 1st also stated that fifty-four masts would have to be shipped shortly after October 15th; that McBride must have fifty-four sets capable of passing Air Force inspection by October 15th; that failure to receive them would put them in jeopardy with the prime contractor; and that they would be forced to take steps to procure these parts elsewhere. McBride offered to render any assistance possible. Mr. Clogg testified that on October 8th Mr. McBride came to his plant and requested him to lower the contract price for the manufacture of the parts. This was refused. Mr. McBride denied any such conversation and further stated that he was not dissatisfied with the price.

On October 12th Mr. McBride wrote Mr. Clogg that unless the fifty-four sets of parts were ready by October 15th, the contract would be cancelled. On October 15th Government inspectors accompanied Mr. McBride to the Clogg plant, without any advance notice to Mr. Clogg, where they made an inspection of the parts. Their find-

ings were unfavorable. On October 17th Mr. McBride advised Mr. Clogg of the cancellation of the contract and stated they would get the parts elsewhere. Appellant claimed that completion of fifty-four sets of parts by October 15th as demanded by Mr. McBride on October 1st, was virtually impossible and that he should have been given a reasonable length of time in which to complete the parts.

It is clear that no more than fifty-two sets of the metal parts were ever manufactured by the appellant. The appellees claim that they made more than thirty or forty personal requests upon the appellant for the delivery of the fifty-two sets. Mr. McBride testified that when he delivered the final drawings to Mr. Clogg on September 10th, he saw fifty-two sets that had been completed under the original drawings, except the mast cap assembly, but that he did not see a single piece which he thought would pass Air Force inspection. He told Mr. Clogg to finish these fifty-two sets according to the original drawings and asked that he make up four additional sets in accordance with the new plans, one set for the Air Force, one for Federal, one for Southern Industries, and one for him. Mr. McBride testified that Mr. Clogg's general attitude, expressed on two or three occasions, was that he had spent all the money he was going to spend on the parts and that the appellees "could take them or leave them."

This case was tried before the trial judge without a jury. The General Rules of Practice and Procedure, Part Three, Subdivision III, Trials, Rule 9, provides that when a case has been so tried, this Court upon appeal may review upon both the law and the evidence but the judgment of the trial court should not be set aside on the evidence unless clearly erroneous and due regard should be given to the opportunity of the trial court to judge of the credibility of the witnesses. This rule has been frequently cited by this Court. *Zawatsky Co. v. Feldman Corp.*, 203 Md. 182, 190, 100 A. 2d 269, and cases there cited.

Judge Manley found that under the original order Mr. Clogg was to manufacture a certain number of mast parts. The contract provided that fifty-two sets were to be delivered by June 15, 1951, and that additional sets were to be delivered as called for in the original schedule. Delivery was not enforced and it was clear from the evidence that there was nothing to prevent Mr. Clogg from manufacturing fifty-two complete sets according to the original drawings. Mr. Clogg claimed that Mr. McConnel told him to hold up on five parts. This was denied by Mr. McConnel. The trial judge, who saw and heard the witnesses, concluded that the new prints submitted on September 10th could not prevent the production of parts according to the original sketches. The trial judge further found that, when Mr. McBride on October 1st demanded final delivery of acceptable parts by October 15th, no complaint was made by Mr. Clogg that he could not finish the sets by that time and that Mr. Clogg did have fifty completed sets on October 1st. The question then arose as to whether the sets manufactured by Mr. Clogg prior to October 15, 1951, came up to specifications and were acceptable to the Government. The trial judge concluded from the testimony of the Government inspectors that the workmanship was poor and the parts or sets of parts available for delivery on October 15th were not satisfactory and did not pass inspection and further that the finished products were not acceptable. The trial judge also found from the evidence that on October 15th Mr. Clogg did not have fifty-two sets acceptable to the Government, ready for delivery to Mr. McBride and this constituted a default in the contract. As Mr. McBride could not make delivery to Mr. McConnel until he received acceptable sets from Mr. Clogg, and as Mr. McConnel had to comply with his contract with the prime contractor, the work of the contractor and sub-contractors was all dependent upon the compliance by each one and that the default on the part of Mr. Clogg constituted a material

breach of his contract. He, therefore, rendered judgment for the appellees.

"The law is well settled, as a general rule, that in mercantile contracts, stipulations as to time are regarded as essential and a material provision of the contract, and upon the failure or non-performance of which the purchaser is not bound to accept and pay for the goods, unless they are delivered or tendered on the day specified in the contract, and may rescind and repudiate the contract. *Barker v. Borzone,* 48 Md. 474; *Ady v. Jenkins,* 133 Md. 36, 104 A. 178; *Jones v. United States,* 96 U. S. 24; *Norrington v. Wright,* 115 U. S. 188." *Standard Scale & Supply Co. v. Baltimore Enamel & Novelty Co.,* 136 Md. 278, 282, 110 A. 486. "Where a promisor before the expiration of the time within which a condition or a promise of the other party must be performed, manifests a willingness to extend the time of performance without specifying the length of extension, or where a promisor for any reason is precluded from insisting on performance of a condition or of a promise at the time specified in the contract, though not precluded from insisting on its performance altogether, he can by informing the other party of his purpose fix a reasonable time within which the condition or promise must be performed. Failure to perform within that time then has the same effect as if the time had been originally stated in the contract." 1 *Restatement of Contracts,* Section 311. It is said in *Williston on Contracts,* Revised Ed., Vol. III, page 2399: "While delay may be disregarded by a manifestation of a willingness to extend the time of performance, the waiving party is not altogether precluded from insisting upon performance within a fixed period; he can by informing the other party of his purpose fix a reasonable time within which the condition or promise must be performed. Failure to perform within that time has the same effect as if the time had been originally stated in the contract and made of the essence." See cases there cited. See also *Aetna Indemnity Co. v. Waters,* 110 Md. 673, 73 A. 712; *Gaybis v.*

*Palm,* 201 Md. 78, 81, 93 A. 2d 269; *Ray v. Eurice,* 201
Md. 115, 93 A. 2d 272; *Lednum v. Barnes,* 204 Md. 230,
103 A. 2d 865.

It appears that fifteen days between October 1st and
October 15th was a reasonable time for Mr. Clogg to
make delivery. We must note that Mr. Clogg agreed
in the original contract on June 4, 1951, to furnish fifty-
two sets by June 15th, within a period of eleven days.
Mr. Clogg admitted that on September 24, 1951, when
the inspectors visited his plant, he had final instructions
of what was required. He had notice on October 1st
that within fifteen days fifty-four sets should be deliv-
ered. It is not disputed that fifty sets were substantially
completed on September 10th. If Mr. Clogg could have
originally completed these sets in eleven days as he agreed
to do in June, it does not appear that the fifteen days
required in the letter of October 1st was unreasonable.

We must also conclude, with the trial judge, that the
default on the part of the appellant was a material one.
If the sale is of a described article, the tender of an
article answering the description is a condition pre-
cedent to the purchaser's liability. *Columbian Iron
Works v. Douglas,* 84 Md. 44, 64, 34 A. 1118. It was
said in *North Bros. & Strauss v. Mallory,* 94 Md. 305,
316, 51 A. 89: "If, therefore, the plaintiff installed in
the defendants' factory an engine that could not develop
the requisite horse power, having failed to perform his
contract, he can bring no action to recover either in
general or special *assumpsit,* unless he have some legal
excuse for his failure to do so. *Gill v. Vogeler,* 52 Md.
663; notes to *Cutter v. Powell,* 2 Smith's Leading cases,
37; *Denmead v. Coburn,* 15 Md. 29." Before a defendant
can be compelled to take anything in fulfillment of a
contract of sale it must be shown not merely that it is
equally as good as the article to be sold, but that it is
the same article he has bargained for and none other.
*Joseph Bros. Co. v. Schonthal Co.,* 99 Md. 382, 398, 58
A. 205. The sets completed by Clogg on October 15th
were by no means acceptable to the Government. As

stated in McBride's letter of October 1st to Clogg, the delivery by October 15th was urgent. Failure of Clogg to deliver these sets to McBride made it impossible for McBride to complete his sub-contract with Southern Industries and, thereby, Southern Industries could not comply with its sub-contract with Federal. This, therefore, was a material breach. *Keystone Engineering Corp. v. Sutter,* 196 Md. 620, 629, 78 A. 2d 191; *Foster-Porter Enterprises v. De Mare,* 198 Md. 20, 36, 81 A. 2d 325.

This is a case more of fact than of law. The trial judge saw and heard the witnesses. We cannot say that his findings of fact under the testimony were clearly erroneous. Based on those facts, his findings of law were correct. The judgment will be affirmed.

*Judgment affirmed, with costs.*