SENICK *v.* LUCAS

[No. 225, September Term, 1963.]

374

*Decided April 10, 1964.*

The cause was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*George B. Woelfel* for appellant.

*J. Britain Winter,* with whom were *M. DeR. Jones* and *Winter & Bowen* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

After a judge in the Circuit Court for Anne Arundel County sitting without a jury, rendered a judgment for eleven hundred dollars against the appellant, he appealed.

He presents two questions for our consideration, but it will only be necessary to answer one: Was the appellee warranted in rescinding an entire contract for the purchase of improved realty, because a small shed located at the extreme rear of the property encroached upon a neighbor's land by 1.2 feet, and, as a result thereof, the appellant had about 20 inches of the shed sawed off and refinished?

On April 22, 1961, the parties entered into a contract of sale to the appellee of two lots in Outing Park, Anne Arundel County, improved by a one story frame bungalow and two very small outbuildings for three thousand dollars in fee, of which two hundred dollars was paid at the time of the signing of the contract, eight hundred dollars was to be paid at time of settlement (within ninety days), and a mortgage for the balance was to be executed to the appellant, payable at the rate of $65.00 per month.

The deposit of two hundred dollars and the sum of eight hundred dollars was paid by the appellee, and the appellee was given keys to the bungalow before the expiration of ninety days. But before complete settlement had been reached, the appellee discovered that a shed at the rear of the lot being sold was located 1.2 feet over the property line of the property to the west.[1]

He attempted to get in touch with the appellant but was unable to do so, as appellant apparently was out of the State. On August 3, 1961, appellee's attorney wrote to the appellant's last known address stating that appellee was rescinding the

---

1. Originally, appellee also complained of a small discrepancy of a few inches in certain of the boundary lines. This complaint was abandoned at argument.

contract because of alleged defects. Then after negotiations attempting to reconcile the parties' differences, another letter, dated August 17, 1961, was sent by the appellee's attorney to the appellant, giving three alternatives of action in reference to the shed in order to settle these differences. One of these proposals was that the appellant would move the shed back to the property line.

The attorney for appellant replied to this letter on August 23, 1961, and stated that appellant would move the shed as set forth in the above proposition. At this point, the evidence becomes conflicting. Appellant states, and appellee denies, that appellee authorized him to "cut that piece [the part that encroached upon the neighbor] off," and he had a competent carpenter saw it off and refinish it. The trial judge found that appellee's version of this disputed fact was the correct one, and we cannot say his finding was clearly erroneous.

The appellant had the carpenter saw off about 20 inches of the west side of the shed and refinish it. The little shed is located in the extreme northwest corner (which is the rear) of the lot, more than 50 feet from the dwelling. It was divided into two parts: the part to the west was 6.5 by 7 feet (at this point, we accept appellee's figures, which vary insignificantly from those of the surveyor), which was used as a tool shed; the eastern portion was 5.3 by 5.5 feet and was utilized as an old-fashioned privy, there being no toilet facilities in the bungalow. The portion used as a privy was not disturbed, but appellee contends that in the sawing off of the approximately 20 inches, the appellant made the tool shed too small for his use thereof as a tool shed, and, in addition, removed a small window located in the western side.

The trial judge found, with evidence to support the finding, that the entire shed "was certainly very inexpensive and probably not worth over $75 - - to $100.00 * * *." (Appellant testified he could replace it "material and all for $100.00.") So, if we regard the tool shed in its present condition as being of no value whatsoever, we find that the parties have "fallen out" over a 6.5 by 7 foot section of a shed, whose total value does not exceed $100.00.

It is well-settled law that an executory contract may be unilaterally rescinded by a party thereto, where there has been a substantial breach thereof by the party desiring to enforce it, *Ady v. Jenkins,* 133 Md. 36, 104 A. 178, *Speed v. Bailey,* 153 Md. 655, 139 A. 534, *Balto. City v. Indus. Elec.,* 230 Md. 224, 186 A. 2d 469, (Compare *Macon v. Zeiler,* 233 Md. 160, 195 A. 2d 687, and *Boring v. Jungers,* 222 Md. 458, 160 A. 2d 780), or the equities are such that the party ought not to be permitted to enforce it. *McKeever v. Realty Corp.,* 183 Md. 216, 37 A. 2d 305, *Straus v. Madden,* 219 Md. 535, 150 A. 2d 230. But this does not mean that every insignificant or inconsequential failure of performance by one party authorizes a rescission by the other party: the failure of performance must be substantial. *Nes v. Union Trust Co.,* 104 Md. 15, 64 A. 310; *Vincent v. Palmer,* 179 Md. 365, 19 A. 2d 183; *Ady v. Jenkins, supra; Speed v. Bailey, supra.*

In the *Speed* case, the Court quoted at some length from 6 R.C.L. 926-927, and explained the principle thus:

" 'It is not every partial failure to comply with the terms of a contract by one party which will entitle the other party to abandon the contract at once. In order to justify an abandonment of it and of the proper remedy growing out of it, the failure of the opposite party must be a total one — the object of the contract must have been defeated or rendered unattainable by his misconduct or default. For partial derelictions and non-performance in matters not necessarily of first importance to the accomplishment of the object of the contract, the party injured must seek his remedy upon the stipulations of the contract itself. Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract, or the failure to perform the contract must be in respect to matters which would render the performance of the rest a thing different in substance from that which was contracted for. * * * When a covenant goes only to a part of the consideration of a contract, is incidental

and subordinate to its main purpose, and its breach may be compensated in damages, such a breach does not warrant a rescission of the contract, but the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom.' "

"By this rule, compensation in damages for slight breaches is substituted for the remedy afforded by rescission of the whole contract. The rule rests upon the principle that greater equity will be maintained between the parties by compelling the one, injured by slight variances or failure to comply literally with all of the terms of the contract, to accept the contract as performed and recover such damages occasioned by the breach as he may be able to show. A departure from this rule would result in permitting any deviation, no matter how minute or unimportant, to be made the basis for the rescission of the contract, and allowing the one so rescinding to obtain an unfair and unconscionable advantage by electing to rescind or retain the bargain, as self-interest might dictate."

In *Ady v. Jenkins, supra, Brantly, Contracts,* p. 415, was quoted, in stating the rule, as follows:

"It is not, however, every breach of contract, or failure exactly to perform, which justifies a rescission. If the promise which is broken is subsidiary—that is, one which does not go to the root of the matter, defeating the object of the contract, and where the breach can well be compensated by damages—the other party can not rescind for this reason."

Judge Hammond, for the Court, in *Balto. City v. Indus. Elec., supra,* stated the doctrine in a slightly different manner:

"* * * before partial failure of performance of one contracting party will give the other a right to rescind, the failure must go to the root of the contract or be in respect to matters which would render the performance of the rest a thing different in substance from that which was contracted for."

See also 4 *Pomeroy, Equity Jur.* (5th ed.), § 1407; II *Restatement, Contracts,* § 375 (2); 2 *Black, Rescission of Contracts,* § 429.

The trial judge stated that the question as to whether this "certainly very inexpensive building" was "a substantial point sufficient to avoid the contract" was a close one, but under all the circumstances decided that it was a "substantial" one, sufficient to warrant a rescission of the entire contract. Applying the principles of law which we have stated above, we are unable to agree.

The purchaser contracted to purchase two lots aggregating 50 by 100 feet of land, improved by a small one-storied bungalow, 14.3 by 23.8 feet, and two small outbuildings, for $3,000. The property presumably was to be utilized for residential purposes. As stated above, the only difficulty arises over a tool shed, 6.5 by 7 feet, located at the extreme rear of the property. If its present value be regarded as nothing, its replacement cost, according to the trial judge's finding, probably would not exceed sixty to seventy-five dollars, and the cost ought to be less if a rearrangement of the present shed be decided upon. Whether a rearrangement be decided upon or a new shed built, there is ample land upon which it may be constructed without inconvenience to the buyer. Under these circumstances, the failure of performance on the part of the seller did not, we think, go to the "root" of the contract or defeat the "object of the contract," as the property may be utilized for the very purposes for which it was bought. And there can be little doubt that the "breach may well [and easily] be compensated by damages." For a collation of the Maryland cases holding that abatement of the purchase price is the proper remedy under certain circumstances, see 19 M.L.E., *Sales of Realty,* § 68.

The instant case has some analogy to the early case of *Connaughton v. Bernard,* 84 Md. 577, 36 A. 265. There, an advertisement for the sale of property, one parcel of which was upon a three-foot alley, stated that the purchaser would have a right to build over the alley at the height of eight feet, provided the use thereof was not interfered with. Upon exceptions to the sale, the Court held that, even conceding that the purchaser was not entitled to build over the alley, that would not

justify the Court in setting aside the sale, but would at most only entitle the purchaser to a rebate of the purchase money. Compare *Sinclair v. Weber,* 204 Md. 324, 104 A. 2d 561.

For the infraction by the vendor mentioned above, the appellee seeks to invoke the equitable doctrine applied in hardship cases when a vendor is seeking specific performance of a contract. As a general proposition, it is held that if a contract be fair, equal and equitable at its inception, no unfairness, inequality or hardship arising from subsequent events or change in circumstances can avail to prevent specific performance. But this general proposition is subject to the exception that if the subsequent events and changed circumstances which produce the unfairness or hardship in the contract, or in its enforcement, as against the defendant, are caused by the plaintiff's own wrongful or inequitable acts or omissions, a sufficient ground is thereby established for refusing to decree specific performance. *The Glendale Corp. v. Crawford,* 207 Md. 148, 114 A. 2d 33, and cases there cited; *Pomeroy, Specific Performance of Contracts* (3rd ed.), § 178. The appellee argues that appellant's failure to move the shed back on the property sold brings this case within the exception noted above and entitles him to rescind the contract.

As previously stated, the doctrine is usually applied in specific performance hardship cases, but if we assume, without deciding, that the doctrine is applicable in an action to recover payments made on the purchase price of real estate upon the theory that the purchaser is entitled to rescind the contract (compare, 1 *Black, op. cit.* § 12 n. 71, wherein it is intimated that the doctrine does not apply in cases of rescission) it cannot entitle the appellee to prevail here. We held above that the failure of performance of the appellant did not go to the root, or defeat the object, of the contract. We think appellant's failure can properly be termed "a partial non-performance in a matter not of first importance to the accomplishment of the object of the contract," which may be compensated by damages; hence, repeating a portion of the quote from *Speed, supra,* it "does not warrant a rescission of the contract, but the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered

therefrom." Of course, the parties to a contract may make performance (full or partial) by one party a condition precedent (or an "express condition" 1 *Restatement, Contracts,* § 252) to the obligation of the other party to perform, either fully or partially, and they may agree that one or both parties have the right to rescind. Compare *Geiger v. Western Md. R. R. Co.,* 41 Md. 4; *Aged Men's Home v. Marley,* 156 Md. 478, 144 A. 521; *Black, op. cit.* § 212. There was nothing in the contract between the parties involved herein that specifically gave the vendee a right to rescind nor was there anything therein that made the promise of the vendor to move the small shed back on the land sold a condition precedent (or express condition) to performance by the vendee. Hence, the general principles of law as enunciated above must be applied.

We therefore hold that the appellee was not entitled to rescind the contract, but that he is entitled to an abatement of the purchase price in the amount of the value of that portion of the shed used as a tool shed. We will, therefore, reverse the judgment and remand the case for further proceedings not inconsistent with this opinion. Such proceedings might include a transfer of the case from the law side to the equity side of the court with leave to the appellant, defendant below to file a bill for specific performance subject to abatement of the purchase price. Maryland Rule 515. Cf. *Clayten v. Proutt,* 227 Md. 198, 175 A. 2d 757. The case of *Ahrens v. Ijams,* 158 Md. 412, 148 A. 816, cited by appellee is readily distinguishable upon the facts.

> *Judgment reversed, and case remanded for further proceedings not inconsistent with this opinion. Appellee to pay the costs.*