324 So.2d 265

**Ellis L. BRUNER and Frances L. Bruner**

v.

**Clarence J. HINES and Laura Hines.**

**SC 1121.**

Supreme Court of Alabama.

Dec. 4, 1975.

Rehearing Denied Jan. 9, 1976.

Craig Miller, Montgomery, for appellants.

James W. Garrett, Jr., Montgomery, for appellees.

JONES, Justice.

This is an appeal from the denial of a purchaser's suit for specific performance of a contract to convey land. We reverse and remand.

In 1973, Ellis and Frances Bruner began to negotiate with Clarence and Laura Hines for the sale of 15 acres of land fronting the Mobile Highway in Montgomery County commonly known as Swann Trailer Park. During these negotiations Hines, the seller, accompanied Bruner, the purchaser, to the site of the property. Bruner pointed out the property he wanted. Bruner later showed Hines a rough plat of the land which had been drawn from a tape measurement done by Bruner and his wife. The tape measurement showed 366 feet road frontage, but Bruner told Hines that was only an estimate and might vary by 10 feet either way.

In August, 1973, the Bruners and the Hines executed a written conract for sale of the 15 acres. The contract included the "rough plat" done by Bruner and his wife, but the plat was understood by both parties not to be an exact description of the land. The contract provided that the purchaser would pay $15,000, of which $3,000 was a downpayment, furnish a survey of the land by a registered civil engineer, and install a fence along the surveyed line within 60 days. The parties agreed that the description of the 15 acres as furnished by the surveyor would constitute the 15 acres contracted to be purchased. Time was stipulated to be of the essence.

Shortly after the contract was signed, Bruner, the purchaser, employed a civil engineer named Mr. Cleghorn to survey the property. The Cleghorn survey was submitted to Hines's attorney who rejected it because Cleghorn's certification had expired.

The purchaser then hired a civil engineer named Mr. Garrett to survey the property. Because of a dispute about working conditions, the purchaser fired Garrett before his survey was complete.

Finally, the purchaser hired a civil engineer named Mr. Blalock. Blalock's certification was in order and his survey was completed and submitted within the sixty-day period provided by the contract.

The fence required by the contract was originally installed along the Cleghorn survey, but was later moved slightly to comply with the Blalock survey. The final survey included 15.1 acres with 376.5 feet of road frontage. The purchaser offered the seller $500 for the additional 0.1 acre.

The seller refused to convey, claiming that the buyer's survey did not comply with the contract. This refusal, says the seller, can be supported by the doctrine of constructive conditions of exchange. Since the contract required the buyer to furnish the survey before it required the seller to convey, the buyer's survey was a condition precedent to the seller's duty to convey. The seller contends further that the buyer failed to comply with the survey requirement before the sixty-day period expired; therefore, his duty to convey never became enforceable.

The validity of the seller's arguments depend upon two issues. First, did the survey furnished by the buyer constitute a breach of his contractual obligations? Second, if the buyer did breach the contract, was his breach so material that it discharged the seller's duty to convey?

Our inquiry into these issues must begin with the contractual language relating to the survey. The contract identifies the 15-acre plot by a rough drawing which is attached to the contract, but it stipulates that the exact description will be provided by a survey which will be furnished several weeks after the formal agreement is consummated. The survey description is the description to be used in the deed and the purchase money mortgage. The contract does not include the normal words of approximation, such as, "15 acres more or less."

Words of approximation have legal significance in Alabama. In the case of *Hodges v. Denny*, 86 Ala. 226, 5 So. 492 (1888), this Court classified contracts for the sale of land into two categories— sales of specific tracts and sales of specified quantities. Regarding specified quantity sales, such as the sale in the instant case, the Court said that the words "more or less" had the effect of qualifying the contractual description of the land to allow for small variances in quantity due to "errors in surveys or variations in instruments." The words of approximation place the risk of such small errors on both parties in specific quantity sales and prevent either party from obtaining an adjustment in the purchase price.

The corollary of this rule is found in *Bankhead v. Jackson*, 257 Ala. 131, 57 So.2d 609 (1952), where the Court said: "A contract of sale by the acre is one wherein a specified quantity is material. Under such a sale, the purchaser does not take the risk of any deficiency and the vendor does not take the risk of any excess."

Since the Hines-Bruner contract included no words of approximation, we must conclude, as the *Bankhead* Court did, that exact acreage is material. Thus, we interpret the survey provisions of the contract to require the buyer to return a survey for exactly 15 acres. When the buyer furnished a survey for 15.1 acres, he partially breached the contract.

■ Our finding that the buyer partially breached his contract brings us to the second issue, which is whether the seller was thereby released from his duty to convey. To preclude the buyer from enforcing the seller's promise to convey, the seller must establish that the buyer's breach was material. Conversely stated, to enforce the seller's promise, the buyer must prove that the survey he furnished substantially performed his contractual obligations. The test for materiality of a partial breach is set out in *Western Union Telegraph Co. v. Tersheshee*, 230 Ala. 239, 160 So. 233 (1935). In that case, the Court said:

" . . . where there is a breach of a dependent covenant, a condition precedent, which goes to the whole consideration of the contract, the injured party has a right to rescind and recover damages for a total breach. But a breach of an independent covenant which does not go to the whole consideration of a contract, but which is subordinate and incidental to the main purpose, does not constitute a breach of the entire contract or warrant its recission by the injured party, and his remedy for a breach is compensation for damages."

The main purpose of the contract between Hines and Bruner is not to furnish a survey, it is to convey land. The survey is incidental to the conveyance. The pivotal question, therefore, is whether the survey which Bruner furnished was so inaccurate that it defeated the main purpose of the contract—the conveyance. We believe that the doctrine of substantial performance is applicable to this problem.

The doctrine of substantial performance, which is now most commonly associated with building construction contracts, was actually introduced in Anglo-American jurisprudence in a land-sale case, *Boone v. Eyre*, 1 H.Bl. 273, 126 Eng.Rep. 160, Note (K.B.1777).[1] This Court has said that "substantial performance does not contemplate a full or exact performance in every slight or unimportant detail, but performance of all important parts." *Miles v. Moore*, 262 Ala. 441, 79 So.2d 432 (1955); *Wilson v. Williams*, 257 Ala. 445, 59 So.2d 616 (1952).

■ In order to decide whether Bruner's survey constituted substantial performance of his contractual duties, it is necessary to analyze the policy considerations behind the doctrine. The doctrine arose to mitigate the harsh results that could flow from constructive conditions of exchange in those contracts which require one party to render performance before the other party's reciprocal promise is enforceable. If constructive conditions had to be literally performed, the party whose duty is enforceable only after his promisor's performance is rendered would have an absolute defense to an action on the contract whenever a trivial portion of his promisor's performance is incomplete.[2]

A good example of how the doctrine of substantial performance operates to prevent such injustice is found in the building construction situation. The doctrine is especially useful in building contracts because of the difficulty of reproducing on the construction site the precise specifications of blue print drawings. Often comparable materials of different brands will have to be substituted for specified but unobtainable brands,[3] and foundation specifications on drawings will bend somewhat to the realities of pouring concrete.[4] If the owner's duty to pay were strictly con-

1. See also 3A *Corbin on Contracts*, § 701 at 312 (1960), and *Senick v. Lucas*, 234 Md. 373, 199 A.2d 375 (1964), for other authority applying the substantial performance doctrine to land-sale cases.

2. See generally, Calamari and Perillo, *The Law of Contracts*, § 157, at 248 (1970).

3. *Jacob & Youngs v. Kent*, 230 N.Y. 239, 129 N.E. 889, 23 A.L.R. 1429 (1970).

4. *Kizziar v. Dollar*, 268 F.2d 914 (10th Cir. 1959).

ditioned upon literal compliance with the contract, construction contractors would rarely be paid because dissatisfied owners could usually point to some discrepancy between the contract specifications and the finished product. Under the substantial performance doctrine, the builder may be held liable in damages for any discrepancy, but if his performance substantially fulfills the main purpose of the contract, he can enforce the owner's promise to pay.

■ There is an analogy between the building contract situation and the instant case. In the instant case, the seller rejected the buyer's survey because it showed 10 feet more road frontage than the rough plat and contained 0.1 acre more area than the contract specified. A professional surveyor testified at the trial that no two surveys of the same land will be identical. He also testified that the cost of obtaining a survey which would absolutely comply with the contract's specifications would be prohibitive, and that the custom in the surveying profession is to accept as accurate surveys which do not exactly meet prescribed acreage. When his testimony is considered in light of the facts that the rough plat's road frontage was measured with a steel tape, not survey equipment, and its recital of 15 acres was only the buyer's best estimate, it is obvious that the seller's promise to convey should not be strictly conditioned upon the buyer's duty to furnish a survey identical to the rough plat.

If the enforceability of the seller's promise were so conditioned, the seller could continue to point out discrepancies in the buyer's survey and put the buyer to tremendous expense resurveying the land. The facts of this case indicate that the buyer under this contract, much like the builder under a construction contract, would be at an unfair disadvantage if he were required to fully and exactly perform all of his contractual duties before he could enforce any of his contractual rights.

■ The question of substantial performance is determined with reference to the existing facts and circumstances of each case. *Wilson v. Williams,* supra; *Gray v. Wood,* 220 Ala. 587, 127 So. 148 (1930). In this case, since the survey was incidental to the main purpose of the contract, and since the surveying profession accepts as accurate surveys with small deviations, we hold that the buyer substantially performed his obligations under the contract when he furnished the Blalock survey. Thus, the seller's promise to convey became enforceable within the 60-day contract period and the seller is now in default.

The doctrine of substantial performance is a necessary inroad on the pure concept of freedom of contracts. The doctrine recognizes countervailing interests of private individuals and society; and, to some extent, it sacrifices the preciseness of the individual's contractual expectations to society's need for facilitating economic exchange. This is not to say that the rule of substantial performance constitutes a moral or ethical compromise; rather, the wisdom of its application adds legal efficacy to promises by enforcing the essential purposes of contracts and by eliminating trivial excuses for nonperformance.

Because both the individual and societal interests are vital coordinates in a private enterprise system, the compromise of full performance should be kept minimal, and compensation should be paid whenever a party's bargained for exchange is not fulfilled. In this case, the seller bargained to sell fifteen acres—no more, no less. We have held that the buyer's survey for 15.1 acres, although it breached the contract, so closely approximated the contract's survey requirement that it constituted substantial performance. Such a holding, however, does not mean that the seller must now convey 15.1 acres with 376 feet of road frontage for the original price of $15,000. Substantial performance of the survey re-

quirement must be distinguished from modification of the contract to conform with the survey. The original terms of exchange remain in force.

 On remand, the trial Court should reopen the case for a determination of the boundary lines of the property to be conveyed. If the trial Court finds that the buyer's survey is as accurate a description of the property as practicable, the Court should determine the value of the additional 0.1 acre and assess that amount against the buyer as damages for partial breach. If the trial Court finds that the buyer's survey is not as accurate as practicable, the Court should determine the most accurate description and enter a decree for specific performance upon that description along with any sums of money which may be necessary to compensate either party for deviations from 15.0 acres.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, MADDOX and SHORES, JJ., concur.